**Juan RODRIGUEZ; Maria A. Rodriguez, Plaintiffs–Appellants,**

v.

**MEBA PENSION TRUST; Lucille Hart, Administrator, Defendants–Appellees.**

No. 88–2901.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1989.

Decided April 7, 1989.

---

Amy Loeserman Klein (William E. Cohen, Marc A. Bernstein, Short, Klein & Karas, P.C., Washington, D.C., on brief), for plaintiffs-appellants.

Joseph Edward Kolick, Jr. (Angelo V. Arcadipane, Marcus C. Migliore, Dickstein, Shapiro & Morin, Washington, D.C., on brief), for defendants-appellees.

Before ERVIN, Chief Judge, and WINTER and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

This case involves a challenge under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, to defendant trust's determination to deny pension benefits to plaintiffs. The district court found it lacked ERISA jurisdiction and, alternatively, that defendant had acted properly in denying benefits. We disagree on both grounds and reverse.

## I.

Plaintiff Juan Rodriguez is a retired marine engineer who became a member of the Maritime Engineer Beneficial Association (MEBA) in 1944. Upon retirement in 1965, he began receiving a monthly pension in the amount of $300, subject to periodic increases. He has continued to receive this pension since 1965.

In 1967, plaintiff began employment as a port engineer for Sea–Land Service, Inc. Sea–Land entered into a collective bargaining agreement with MEBA in June, 1968. In response to an inquiry from plaintiff, I.A. Lamy, vice-president of MEBA and

trustee of the MEBA trust, informed plaintiff that he was required to apply for reinstatement to union membership but that such "[m]embership will not interfere with your pension."

Subsequently, on October 16, 1968, the MEBA pension trust regulations were amended and employees in plaintiff's position were offered the option of suspending their pension checks and accruing further benefits or continuing to receive pension checks but foregoing further accruals. Notice of this option was hand-delivered on November 25, 1969 to MEBA members who were affected by this new provision. Plaintiff never received such notification.

On December 18, 1972, plaintiff wrote Mildred Killough, then MEBA trust administrator, requesting a clarification of his status with the trust. Killough responded on March 1, 1973, informing plaintiff that he could have elected to have his pension benefits suspended under the 1968 option, thus accruing additional credits, but that since he elected to continue to receive pension benefits, he could accrue no further credits. For the next twelve years, although he corresponded with the trust on several occasions, plaintiff did not question his right to exercise the 1968 option.

On January 25, 1985, upon contemplating retirement from Sea–Land, plaintiff wrote the administrator of the MEBA trust requesting information on a lump sum payment of benefits. Frederick Jackson, pension trust manager, advised plaintiff that such a payment was not available because of his failure to suspend pension payments under the 1968 option. Plaintiff, through counsel, then requested a formal review of the denial of benefits.

The MEBA Pension Trust reviewed plaintiff's requests on three separate occasions and denied them each time. The denials were predicated upon plaintiff's failure to suspend his pension payments under the 1968 option. The trust did not dispute the fact that Rodriguez was at one time eligible to exercise the option.

On December 23, 1987, Juan and Maria Rodriguez filed suit under ERISA, challenging the MEBA trust's denial of their requested pension benefits. Plaintiffs moved for summary judgment on May 6, 1988, claiming that Juan Rodriguez did not receive notice of his option in 1968 or 1969, and that the decision to deny him the opportunity to exercise this option now was arbitrary and capricious. Defendants claimed that plaintiffs' action was not cognizable under ERISA, that it was untimely under a variety of limitations theories, and that the trust's decision was proper because plaintiff failed to respond to the March, 1973 letter from Killough which notified him of the option.

The district court ruled for defendants. It concluded that ERISA did not apply to plaintiffs' claim; that plaintiffs' suit was barred by Maryland's statute of limitations which applied as a result of diversity jurisdiction; and that if the suit was timely, the trust's denial of benefits was proper. This appeal followed.

## II.

ERISA is a comprehensive scheme of national scope designed to supplant diverse state regulation of private retirement plans. Accordingly, the Act supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). Recognizing, however, that it would be problematic to judge pre-ERISA conduct by post-ERISA standards, Congress provided that preemption of state law under § 1144(a) "shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. § 1144(b)(1). The application of ERISA thus depends upon: 1) a determination of the time the cause of action arose, and 2) a determination of the time of acts or omissions. *See Tanzillo v. Local Union 617, International Brotherhood of Teamsters*, 769 F.2d 140, 143–44 (3d Cir.1985); *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1500–1501 (9th Cir.1984); *Quinn v. Country Club Soda Co., Inc.*, 639 F.2d 838, 840 (1st Cir. 1981).

The district court concluded that plaintiffs met the first prong of the § 1144 test because their cause of action did not accrue until 1986 when the trustees formally denied benefits. The court failed to exercise ERISA jurisdiction because it found "the critical acts or omissions" were omissions of notice in 1969 and the Killough letter of 1973. We hold, however, that ERISA jurisdiction is proper because both the cause of action and the operative acts or omissions occurred after January 1, 1975.

### A.

■ The district court correctly recognized that the date of accrual of the cause of action would not defeat ERISA jurisdiction. An ERISA cause of action does not accrue until a claim of benefits has been made and formally denied. *Tanzillo*, 769 F.2d at 144; *Menhorn*, 738 F.2d at 1498; *Quinn*, 639 F.2d at 840; *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.*, 637 F.2d 357, 361 (5th Cir. 1981). To hold otherwise would require lay participants and beneficiaries to be constantly alert for "errors or abuses that might give rise to a claim and start the statute of limitations running." *Menhorn*, 738 F.2d at 1501. It also would burden the judicial system with multiple and premature actions.

■ Plaintiff first made a claim for benefits in 1985, one year before his retirement. The MEBA trustees correspondingly did not formally deny him pension benefits until February, 1986. Thus, plaintiffs' cause of action did not accrue until 1986.

### B.

■ The timing of the critical acts or omissions is also no bar to ERISA jurisdiction in this case. In *Martin v. Bankers Trust Co.*, 565 F.2d 1276 (4th Cir.1977), this court held that where an employee had retired, filed his claim for benefits, and had benefits denied pre-ERISA, the mere filing of a post-ERISA suit did not establish jurisdiction under § 1144. We have not yet considered, however, whether ERISA applies where a plaintiff's application for pension benefits is made and denied post-ERISA, but at least some acts occur pre-ERISA, as in this case.

■ Among the circuits to consider this issue, two competing views have evolved. The Third Circuit regards the trustees' act in denying a pension application as an act or omission which is subject to ERISA. *Tanzillo*, 769 F.2d at 144. *See also Coward v. Colgate–Palmolive Co.*, 686 F.2d 1230, 1234 (7th Cir.1982) (denial of pension benefits post-ERISA was sufficient to invoke ERISA, even though employee had retired years before ERISA); *Reiherzer v. Shannon*, 581 F.2d 1266, 1268–69 (7th Cir. 1978). By contrast, the First and Ninth Circuits have held that if the trustees' denial is the "inevitable result of unequivocal pre-effective date interpretations" of the plan, then the denial is not reviewable. *Menhorn*, 738 F.2d at 1501; *Quinn*, 639 F.2d at 841.

We adopt the Third Circuit view. While a claim determination may require the plan's trustees to consider pre-ERISA acts, the act of denying a pension post-ERISA will invariably involve a "contemporaneous construction of the plan's provisions ... to which ERISA's fiduciary standards apply." *Tanzillo*, 769 F.2d at 144. Such a view fosters the congressional intent "to extend the protections of ERISA ... as soon as practicable," *Winer v. Edison Brothers Stores Pension Plan*, 593 F.2d 307, 313 (8th Cir.1979), so as to "provid[e] ... ready access to the Federal courts." 29 U.S.C. § 1001(b). It also promotes Congress' intention that exceptions to ERISA's preemption provisions be narrowly construed. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1552–1553, 95 L.Ed. 2d 39 (1987) ("preemption provisions of ERISA are deliberately expansive"). Further, the Third Circuit approach has the advantage of certainty. Courts need only look to the date of the trustees' determination to decide whether ERISA applies. Finally, equitable considerations support this standard. Plan participants cannot be expected to inquire about benefits until retirement. Because plan trustees will not act on a participant's claim until it is made,

their act of denying a claim will inevitably involve a post-ERISA interpretation of the plan.

Here the MEBA trustees did not deny plaintiff's claim until February, 1986, over ten years after ERISA's effective date. In so doing they engaged in a contemporaneous construction of the plan's provisions. Plaintiffs may therefore contest the trust's actions under ERISA and face no time bar under state law.[1]

### III.

■ The district court held, in the alternative, that the MEBA trust's decision to deny plaintiffs' benefits was justified. It rejected the contention that the 1973 correspondence from Killough failed to notify plaintiff of his options. It also denied plaintiff's assertion that he was treated differently from similarly situated beneficiaries because other beneficiaries "contacted the Pension Trust, both soon after they learned of the option or many years in advance of retirement." We hold, however, that the trustees did fail to adequately notify plaintiff of his option and that plaintiff must now be afforded the opportunity to exercise it.[2]

In a series of pre-ERISA cases under §§ 301 and 302 of the Labor Management Relations Act, courts held that pension plan participants must receive adequate notice of changes requiring their affirmative action and an opportunity to act in response to such notice. *See, e.g., Valle v. Joint Plumbing Industry Bd.,* 623 F.2d 196, 202–04 (2d Cir.1980); *Norton v. I.A.M. National Pension Fund,* 553 F.2d 1352, 1359 (D.C.Cir.1977) (arbitrary and capricious for

trustees to cancel service credits when plaintiff not afforded "adequate chance" to comply with new requirements); *Burroughs v. Board of Trustees of the Pension Trust Fund for Operating Engineers,* 542 F.2d 1128, 1131 (9th Cir.1976) (arbitrary and capricious to apply break-in-employment rule to employees "who had no notice of its existence and hence no reasonable opportunity to protect themselves from its impact"). ERISA then codified the standards of fiduciary conduct which these courts found to govern the plan/participant relationship. *See NLRB v. Amax Coal Co.,* 453 U.S. 322, 332, 101 S.Ct. 2789, 2795, 69 L.Ed.2d 672 (1981) ("ERISA essentially codified the strict fiduciary standards that a § 302(c)(5) trustee must meet").

In ERISA, Congress set out to

protect ... participants in employee benefit plans and their beneficiaries, *by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto,* by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b) (emphasis added).

ERISA provides specific disclosure requirements in 29 U.S.C. § 1022(a)(1) which require plan participants and beneficiaries to be apprised of any "material modification in the terms of the plan." *See also* 29 U.S.C. § 1024(b)(1). Likewise, the broad fiduciary duties imposed on plan trustees are to be exercised "solely in the interest of

---

1. Under the district court's view, plaintiffs' state claims accrued in 1973 when Rodriguez received the letter from Killough informing him that he had failed to make an election of benefits in 1968. Hence, the state claims were held to be time barred.

   ERISA provides no explicit limitations period for private causes of action. Under ERISA, plaintiffs' various claims are governed by Maryland's three year limitations period for breach of contract, *see Dameron v. Sinai Hospital of Baltimore, Inc.,* 815 F.2d 975, 981 (4th Cir.1987), and 29 U.S.C. § 1113. Plaintiffs' claims accrued in 1986 with the trustees' denial of benefits.

*Tanzillo,* 769 F.2d at 144; *Menhorn,* 738 F.2d at 1498; *Quinn,* 639 F.2d at 840. Thus they are not time barred.

2. The Supreme Court's decision in *Firestone Tire and Rubber Company v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), held that the determinations of plan trustees on benefit eligibility were subject to de novo review absent a plan provision for the exercise of trustee discretion. The deficiency of the trustees' conduct in the instant case, however, is not dependent upon the nature of the plan or the standard of review applied thereto.

the participants and beneficiaries." 29 U.S.C. § 1104.

Courts have interpreted these provisions to require notice to plan participants of changes in a plan's provisions and an opportunity after such notice for the participant to take action. *Genter v. Acme Scale & Supply Co.*, 776 F.2d 1180, 1185–86 (3d Cir.1985); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir.1984); *Kaszuk v. Bakery and Confectionery Union*, 638 F.Supp. 365, 369–70 (N.D.Ill.1984), *aff'd in relevant part*, 791 F.2d 548 (7th Cir.1986); *Chambless v. Masters, Mates & Pilots Pension Plan*, 602 F.Supp. 904, 909–10 (S.D.N.Y.1984), *aff'd*, 772 F.2d 1032 (2d Cir. 1985); *Hillis v. Waukesha Title Co., Inc.*, 576 F.Supp. 1103, 1107–08 (E.D.Wisc.1983). Plan participants should not lose pension benefits through mistakes and misunderstandings. "Congress promulgated the fiduciary duty and other provisions of ERISA, ... to ensure that plan participants would receive *effective* notice of any plan changes that might affect their pension rights...." *Kaszuk*, 638 F.Supp. at 371 (emphasis in original); H.R.Rep. 533, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4646. Application of an overriding fiduciary standard of fairness was Congress' goal because it was "grossly unfair to hold an employee accountable for acts which disqualify him from benefits, if he had no knowledge of these acts, ..." S.Rep. No. 127, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 4838, 4847. *See also Hillis*, 576 F.Supp. at 1107.

Here plaintiff did not receive fair notice of his option. As the district court found, the 1969 letter, intended to notify re-employed pensioners of their options, was never even delivered to plaintiff. When Rodriguez wrote the trust in 1972 to inquire if he was eligible to receive additional benefits, administrator Killough responded that because he had failed to suspend his benefits pursuant to the 1968 option, "he could accrue no further credits." Thus, plaintiff only learned of his option in 1973 when he was told it was unavailable because he did not elect it in 1968. Subsequently, during 1975 and 1976, the MEBA trust gave two other port engineers a new opportunity to suspend their pensions and accrue further benefits because they had never been informed of their option. It never, however, notified plaintiff that its 1973 advice was incorrect and that he now could make his election, although a MEBA trust file identified plaintiff as a similarly situated individual. While the MEBA trust faults Rodriguez for failure to pursue his claim, it was the fiduciary's duty to afford him a fair opportunity to do so, not the beneficiary's duty to figure out the fiduciary's mistakes.

We cannot accept the district court's view that no duty of notification existed because this case did not involve " 'retroactive application' of a change in a pension plan provision which would work to cancel rights which were about to or had already vested...." The retroactive application of a change in a plan provision is not the sole criterion for deciding whether the obligation to give reasonable notice was fulfilled. Indeed, the cases often address a trustee's failure to notify plan participants of opportunities to avail themselves of added benefits in the future. *See Genter* 776 F.2d at 1185 (no notice of opportunity to increase insurance benefits); *Kaszuk*, 638 F.Supp. at 370–71 (no notice of election of new pre-retirement spousal benefits).

Finally, we reject the trust's assertion that the doctrine of laches bars plaintiffs' claim, because plaintiff knew of his option in 1973 and did not contest it until 1985. It makes little sense for the trustees to claim plaintiff sat on his rights when the same trustees told plaintiff he had no such rights to exercise. Plaintiff was informed in 1973 that his option was unavailable. As such, he had no reason to raise the issue again until retirement.

As Rodriguez never received adequate notice of his option, we reverse the judgment of the district court and remand with instructions to afford him the choice of accepting his present pension benefits or the benefits that would have accrued had the option been exercised, offset by payments already received. We leave to the district court the precise calculation of the

amount of any offset, including the time-value of pension payments made to Rodriguez.

REVERSED.