**John Joseph COTTER,
Plaintiff–Appellee,**

v.

**EASTERN CONFERENCE OF TEAMSTERS RETIREMENT PLAN; Michael F. Miles, Administrator, Defendants–Appellants.**

**John Joseph COTTER,
Plaintiff–Appellant,**

v.

**EASTERN CONFERENCE OF TEAMSTERS RETIREMENT PLAN; Michael F. Miles, Administrator, Defendants–Appellees.**

**John Joseph COTTER,
Plaintiff–Appellee,**

v.

**EASTERN CONFERENCE OF TEAMSTERS RETIREMENT PLAN; Michael F. Miles, Administrator, Defendants–Appellants.**

**Nos. 89–2950, 89–2960 and 89–2971.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 3, 1989.

Decided March 12, 1990.

Order on Grant of Rehearing
April 17, 1990.

---

Patrick Joseph Szymanski (Robert M. Baptiste, Baptiste & Wilder, P.C., on brief), for defendants-appellants.

William James Bethune (Roy D. Snyder, Jr., Bierbower & Bierbower, on brief), for plaintiff-appellee.

Before MURNAGHAN and CHAPMAN, Circuit Judges, and NORTHROP, Senior United States District Judge for the District of Maryland, sitting by designation.

MURNAGHAN, Circuit Judge:

Plaintiff John Joseph Cotter was an employee of the Eastern Conference of Teamsters ("Eastern Conference") for over twenty years. During that time he was a participant in defendant Eastern Conference of Teamsters Retirement Plan ("Plan"). Defendant Michael F. Miles was the Plan's Administrator. In August 1977 Cotter left the Eastern Conference to take a position with an entity related to the Eastern Conference, namely, the International Brotherhood of Teamsters ("International"), where he worked until August 1, 1985.

The dispute here turns on the facts that (a) despite Cotter's eligibility to receive benefits under the Plan upon his departure from the Eastern Conference in 1977, the Plan made no payments to him until he filed a claim in 1985 and (b) until the filing of the instant lawsuit, Cotter had in no way protested the fact that he was not receiving benefits during the period between his de-

parture from the Eastern Conference and the filing of his claim in 1985.

Four undisputed aspects of the Plan as it applied to Cotter are relevant to this case. First, under the Plan, Cotter was eligible for benefits beginning on November 1, 1974. Second, under the Plan, Cotter was not entitled to receive those benefits until he retired from the Eastern Conference. Third, under the Plan, Cotter was entitled to receive those benefits upon retirement from the Eastern Conference even though he began new employment with the International. Finally, under the Plan, Cotter could not claim benefits retroactively.

On or about June 6, 1977, while contemplating accepting the job offer from the International, Cotter asked Miles to calculate his equity in the Plan. Miles did the calculations using June 30, 1977, as a projected retirement date. The district court found that, at that time, "Cotter did not consider collecting his benefits under the Plan while working at the International." The district court in finding for Cotter supported its conclusion, in part, by noting that Cotter had simultaneously inquired into benefits available to him under another equity plan (the "Affiliates Plan") from which Cotter definitely had no intention of collecting benefits in 1977. The court inferred from this fact that Cotter's 1977 inquiries into his overall equity were "with an eye toward future recovery."

At no point in their discussions did Miles explicitly inform Cotter that he would be eligible to collect benefits from the Plan while employed at the International. In addition, Cotter testified that "it was his understanding that he was not retiring when he left Eastern to go to the International; rather, he viewed the move as going from one Teamsters office to another." Finally, during one conversation with Cotter, Miles referred to Cotter's benefits or credits as "frozen." The district court found that "Cotter understood this to mean that he was not eligible to draw on his pension until he retired from the International."

In July 1978, after Cotter had begun working for the International, Miles sent Cotter a letter summarizing his "Vested Retirement Benefit." The letter informed Cotter of the monthly payment to which he was entitled and contained an enclosed worksheet that referred to Cotter's pension as "deferred." Cotter read, but did not respond to, the letter. Each subsequent year, Miles sent Cotter annual reports from the Plan. The district court found that "Cotter remained of the view that his benefits were frozen or deferred until he retired from the International."

In 1985, Cotter informed Miles of his departure from the International and filed a claim for benefits. In August of that year, Cotter began receiving benefits from the Plan.

On February 24, 1987, Cotter was present when an Eastern Conference official was giving a deposition in another lawsuit. The official mentioned that Cotter could have been collecting benefits under the Plan while he was employed at the International. The district court found that "this was the first time Cotter became aware that he could have drawn his Plan benefits while he was working at the International."

In February 1988, Cotter filed suit against Miles and the Plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Cotter alleged that the Plan violated its own terms by failing to send him his benefits upon his retirement from the Eastern Conference. He alleged also that Miles violated his fiduciary duty to Cotter. Cotter sought damages equalling the sum total of the payments to which he was entitled, but which he did not receive, plus prejudgment interest.

The district court found for Cotter on both theories, but denied Cotter's request for prejudgment interest. The defendants appeal the district court's interpretation of the Plan and finding of a breach by Miles of a fiduciary duty. The appellants argue further that even if the district court's decision is substantively correct, Cotter's claims are at least partially time barred. Cotter cross-appeals the denial of prejudgment interest.

## I

The Eastern Conference contends that the district court erred in finding that the terms of the Plan obligated the Eastern Conference to begin payments to Cotter upon his move to the International. We agree, however, with the district court.

Two provisions of the Plan are here at issue. Cotter relies upon Section 5.1, governing "Late Retirement Income." Section 5.1 provides that an employee who, like Cotter, continues his employment after his normal retirement date "will receive a late retirement income commencing on the first day of the month immediately following the calendar month in which his employment ceases by reason other than death." Cotter argues that this unqualified mandatory language obligated the Plan to commence payment of his benefits upon his retirement from the Eastern Conference in 1977 even though he did not file a claim for benefits at that time.

The Eastern Conference relies upon Section 15.7(A), which provides that "[a] Participant or Beneficiary shall notify the Plan Administrator of a claim for benefits under the Plan." Miles had interpreted the provision as a requirement that all claimants, including Cotter, were required to inform the Plan of a claim for benefits. Under Miles' interpretation, because Cotter did not file a claim for benefits while he was working at the International, he was not entitled to receive benefits during that time. Furthermore, under Miles' interpretation, Cotter can not now claim those benefits because the Plan prohibits retroactive awards of benefits.

█ Before interpreting the Plan's provisions, we must first determine the standard of deference to which Miles' interpretation of the Plan is entitled. Relying upon *Firestone Tire & Rubber Co. v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), appellants argue that the district court should have deferred to Miles' interpretation of the Plan unless that interpretation was unreasonable or an abuse of discretion. Under *Bruch,*

a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard *unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.*

*Id.* at 956 (emphasis added). Section 15.-2(D) of the Plan provides that the Plan Administrator (Miles) has the duty "to interpret and construe the provisions of the Plan and to make regulations which are not inconsistent with the terms thereof." Therefore, appellants argue, the district court should have deferred to Miles' interpretation of the provision requiring notification of a claim for benefits unless that interpretation was unreasonable or an abuse of discretion. *See Boyd v. Trustees of United Mine Workers Health & Retirement Fund,* 873 F.2d 57, 59 (4th Cir.1989) ("Where the fiduciary or administrator has discretionary authority, an abuse of discretion standard should apply.").

Cotter asks us to interpret *Bruch* to apply only to determinations of participant *benefits eligibility.* Because appellants concede Cotter's eligibility, and dispute only his entitlement to collect his benefits retroactively, Cotter argues, *Bruch* does not apply.

We agree with appellants that Miles' interpretation is entitled to an abuse of discretion standard of deference. As a formal matter, it is true that benefits eligibility, strictly speaking, is not at issue here. However, Cotter brought his case under 29 U.S.C. § 1132(a)(1)(B), bringing us within the letter of *Bruch*'s holding. Furthermore, application of an abuse of discretion standard is within the spirit of *Bruch* in light of the fact that the issues presented by this case are tantamount to an eligibility determination. Indeed, it is odd to argue, as Cotter does, that the Administrator's entitlement to deference should extend to something as important as the interpretation of provisions regarding benefits eligibility, but not to the apparently less important provisions regarding procedures for filing claims.[1]

---

1. Although Cotter cites cases applying *Bruch*

deference to eligibility determination interpreta-

Although our review of Miles' interpretation of the Plan's terms is not *de novo*, we nonetheless reject his interpretation as an abuse of discretion.[2] As the facts of this case demonstrate, Miles' interpretation of the Plan might lead to forfeiture of vested rights to retirement benefits where, as here, a participant does not immediately file a claim. Such a forfeiture plainly violates 29 U.S.C. § 1053(a), which provides: "Each pension plan shall provide that an employee's right to his normal retirement benefit is *nonforfeitable* upon the attainment of normal retirement age" (emphasis added). *See also Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 449 (9th Cir. 1980) (legislative history of ERISA reveals that *"vested* employee rights cannot be forfeited for any reason") (emphasis in original)); *see also Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 510, 101 S.Ct. 1895, 1899, 68 L.Ed.2d 402 ("the concepts of vested rights and nonforfeitable rights are critical to the ERISA scheme"). Given the incompatibility between Miles' interpretation and the statutorily prescribed critical aspect of the ERISA scheme which we have mentioned, the requirement that a participant file a claim before vested retirement benefit payments begin is unreasonable and would constitute an abuse of discretion.

As noted by the district court, rejection of Miles' interpretation of Section 15.-7(A)'s provision that "[a] Participant or Beneficiary shall notify the Plan Administrator of a claim for benefits under the Plan" does not render the provision meaningless. For two reasons, we read the provision to apply to claims for benefits other than those that vest upon retirement. First, our reading of the provision avoids the conflict with the statutorily prescribed policy against forfeiture of vested retirement benefits. Second, the context of the provision supports our interpretation. The provision appears in the "Plan Administration—Miscellaneous" subsection of the "Plan Administrator" section of the Plan. It does not appear in the portions of the Plan governing eligibility for vested retirement income. The same subsection includes a reference to investigations by the Plan Administrator, differentiating it from the portions of the Plan discussing benefits upon retirement with language indicating that payments would begin automatically.

For these reasons, we find that the Plan violated its own terms by requiring Cotter to file a claim for benefits before commencing payment of Cotter's retirement benefits.[3]

## II

Appellants argue that even if their actions did violate the Plan's terms, the statute of limitations at least partially bars Cotter's cause of action. We disagree.[4]

The parties agree that Maryland's three-year statute of limitations for contract actions governs Cotter's claim that the Plan violated its own terms by denying him benefits. *See Dameron v. Sinai Hospital of Baltimore*, 815 F.2d 975, 981 (4th Cir.1987). The parties disagree over when the statute of limitations begins to run. Appellants argue that it begins to run as soon as the Plan fails to pay the benefits in question; Cotter argues that it begins to run when a claim for benefits has been made and then denied.

Our recent holding in *Rodriguez v. MEBA Pension Trust*, 872 F.2d 69 (4th Cir.1989), establishes the law of the Fourth Circuit in Cotter's favor. In *Rodriguez*, we held that:

An ERISA cause of action does not accrue until a claim of benefits *has been*

tions, none of the cited cases actually restrict to benefits eligibility determinations *Bruch*'s statement of when *de novo* review does not apply; they simply state *Bruch*'s holding as it applies to the benefits eligibility determination at issue. *See, e.g., Boyd, supra*, 873 F.2d at 59; *Schultz v. Metropolitan Life Ins. Co.*, 872 F.2d 676, 678 (5th Cir.1989).

2. It may, in fact, in the particulars here dealt with, not have been determinative whether abuse of discretion review or *de novo* consideration was called for since the abuse of discretion by the Trustees on Miles' interpretation stands fully disclosed.

3. Cotter argued, and the district court held, that Miles' actions constituted a violation of the fidu-

ciary duty that he owed to Cotter. At oral argument, counsel for Cotter informed us that an affirmance of the judgment against Miles would not be necessary if we were to affirm the judgment against the Plan. Because we hold for Cotter on the issue of proper interpretation of the Plan's terms, we vacate as moot the district court judgment against Miles.

4. Appellants argue also that Cotter's fiduciary duty claim is partially time barred. Because we have vacated the judgment against Miles for mootness, we obviously need not address the application of the statute of limitations on the claim against Miles.

*made and formally denied....* To hold otherwise would require lay participants and beneficiaries to be constantly alert for "errors or abuses that might give rise to a claim and start the statute of limitations running."

872 F.2d at 72 (emphasis added; citations omitted). Thus, appellants' contention that the statute of limitations for each benefit check began to run as soon as the benefit check in question was not sent is incorrect.

Although *Rodriguez*'s mandate is clear, its application to the facts of the case before us is tricky because specification of the date at which Cotter's claim for benefits "was denied" is somewhat elusive. The record is unclear as to whether the claim that Cotter filed upon departure from the International in 1985 was such that the amount of the benefit check that Cotter subsequently received effectively constituted denial of a claim for the benefits at issue in this case. If it was, the three-year statute of limitations began to run in August 1985 (the date of receipt of the first benefit check), bringing the February 1988 complaint within the three-year statute of limitations. If it was not, given the apparent absence of any other formal claim for the benefits at issue in this case, we would be forced to characterize Cotter's initiation of this lawsuit as the "filing of a claim" (and, perhaps, the defendants' answer denying liability as the "denial of the claim"). Such a characterization would lead us to the anomalous result that the statute of limitations on Cotter's claim did not begin to run until after his lawsuit was filed.

However, to avoid those difficulties, we can remain consistent with *Rodriguez*'s sentiment by applying the alternative approach of determining the time at which some event other than a denial of a claim should have alerted Cotter to his entitlement to the benefits he did not receive during his employment by the International. *See, e.g., Dameron v. Sinai Hospital of Baltimore, Inc.,* 815 F.2d 975, 982 n. 7 (4th Cir.1987) (statute began to run when defendant notified plaintiff of intent to reduce benefits). In this case such an event occurred in February 1987, when Cotter happened to be present at the deposition of an Eastern Conference official (in an unrelated matter) who made statements indicating to Cotter that he had been entitled to benefits while he was working at the International. Cotter filed his complaint in February 1988, one year after the deposition, well within the three-year time limita-tion prescribed by Maryland law. Such an alternative formulation for triggering the statute of limitations makes more sense than the usual claim-denial trigger in cases such as this where the participant may never have filed a formal claim for the disputed benefits. Under the alternative formulation (as well as under the claim-denial trigger formulation), Cotter's claim is not time barred.

### III

■ Finally, Cotter cross-appeals the district court's decision to deny, without explanation, prejudgment interest on the amount to which Cotter is entitled. We affirm.

In making his plea for prejudgment interest, Cotter relies heavily upon the fact that the parties had stipulated to the amount of damages to which Cotter would be entitled if the district court were to rule in his favor. Cotter argues that prejudgment interest is appropriate to render complete the relief provided by the court.

It is true that, as a rule, prejudgment interest is appropriate not as a penalty, but as a means of affording a plaintiff such as Cotter complete relief. It is also true that prejudgment interest is particularly appropriate where, as here, there is no dispute as to the amount of damages to which the plaintiff is entitled. In addition, courts of appeals generally disapprove of denials of prejudgment interest without explanation. *See, e.g., Vance v. American Hawaii Cruises, Inc.,* 789 F.2d 790, 795 (9th Cir. 1986).

■ However, we are hesitant to reverse a district court's determination of entitlement to prejudgment interest because such determinations are entrusted to the district court's discretion. *See, e.g., Twin City Sportservice v. Charles O. Finley & Co.,* 676 F.2d 1291, 1310 (9th Cir.), *cert. denied,* 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982). Moreover, Cotter's failure to act earlier, though not rising to the level of causing a statute of limitations bar to his claim, is an equitable consideration militating against prejudgment interest. Accordingly, we decline to reverse the district court's determination.

For the foregoing reasons the judgment of the district court against Miles is vacated as moot. The judgment of the district court against the Plan is

AFFIRMED.

**430**

## ORDER ON PETITION FOR REHEARING

On March 12, 1990, we delivered our decision in *Cotter v. Eastern Conf. of Teamsters*, No. 89-2950/60/71, affirming the district court's holding in favor of the appellee John Joseph Cotter against appellant Eastern Conference of Teamsters Retirement Plan ("Plan"); vacating as moot the district court's holding in favor of Cotter against appellant Michael F. Miles, the Plan's administrator; and affirming the district court's refusal to award Cotter prejudgment interest. The appellants have filed a petition for rehearing, asking us to address the district court's award of attorneys' fees to Cotter, a matter raised in appeal number 89-2971 and not considered in our opinion due to an internal court clerical error. In considering the petition for rehearing, we have the benefit of the parties' earlier full briefing of the matter.

We are of the opinion that the district court erred neither in deciding to award attorneys' fees nor in deciding upon the amount of the award. Accordingly, we grant the petition for rehearing and now affirm the district court's decision to award attorneys' fees.

Entered at the direction of Judge MURNAGHAN, with the concurrences of Judge CHAPMAN and Judge NORTHROP.