**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 05-1341**

———————————

DEAN I. SINGLETON,

Plaintiff - Appellant,

versus

TEMPORARY DISABILITY BENEFITS PLAN FOR
SALARIED EMPLOYEES OF CHAMPION INTERNATIONAL
CORPORATION #505; LONG TERM DISABILITY
BENEFITS PLAN FOR SALARIED EMPLOYEES OF
CHAMPION INTERNATIONAL CORPORATION #506;
CHAMPION INTERNATIONAL SALARIED RETIREMENT
PLAN #001; CHAMPION INTERNATIONAL CORPORATION,
as Administrator of the above-named defendant
plans; CHAMPION CREDIT UNION, as Sponsor and
Administrator of the above-named defendant
plans,

Defendants - Appellees.

———————————

Appeal from the United States District Court for the Western
District of North Carolina, at Asheville.  Dennis L. Howell,
Magistrate Judge.  (CA-03-64-1)

———————————

Argued:  March 16, 2006                    Decided:  May 19, 2006

———————————

Before WILKINSON and SHEDD, Circuit Judges, and Cameron McGowan
CURRIE, United States District Judge for the District of South
Carolina, sitting by designation.

———————————

Reversed and remanded by unpublished per curiam opinion.

———————————

**ARGUED:** Michael L. Miller, Asheville, North Carolina; Allan Paul Root, ROOT & ROOT, Weaverville, North Carolina, for Appellant. Bruce McCoy Steen, MCGUIREWOODS, L.L.P., Charlotte, North Carolina, for Appellees. **ON BRIEF:** Susan P. Dion, MCGUIREWOODS, L.L.P., Charlotte, North Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Plaintiff Dean Singleton sought and was denied an award of disability benefits for his depression. Finding that both Singleton and the employer-sponsored benefit plans have mishandled the administrative resolution of his claim, we remand this case to the district court with directions to remand it to the plan administrator for a determination of whether Singleton is disabled as defined in the plans.

## I.

Dean Singleton was employed with Champion International Corporation for almost thirty years, eventually serving as Chief Executive Officer of the Champion Credit Union. As a Champion employee, he participated in the company's temporary and long-term disability benefit plans (hereafter "the Plans"), which are governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1001 et seq. (West 2005).

During the summer of 1996, a bank audit revealed that Singleton had engaged in various improprieties. On August 8, 1996, the Credit Union's Board of Directors placed Singleton on administrative leave. Several weeks later, on September 19, 1996, Singleton wrote the Board requesting disability sick leave instead of termination or resignation. In this letter, Singleton explained that he was "currently under . . . care for depression" which he

3

had experienced "for some time," and which in his opinion was the reason for "the unfortunate circumstances" at the Credit Union. On September 30, 1996, Singleton's employment with Champion was terminated.

Over the next several years, Singleton and the Plans exchanged correspondence concerning Singleton's eligibility for disability benefits. On December 23, 1997, more than a year after his termination, Singleton's attorney sent a letter to the Plans indicating that Singleton believed himself eligible for disability benefits, had requested such benefits in September 1996, and was still awaiting an answer. On January 12, 1998, the Plans responded that they had no record of any September 1996 claim for benefits. They accordingly requested a copy of the 1996 claim, as well as any other supporting documentation.

Singleton did not promptly respond to this letter. On December 30, 1999, nearly two years later, Singleton's new attorney sent the Plans another letter requesting benefits. On January 31, 2000, the Plans answered that Singleton had not corresponded with them since January 1998, and that his claim was deemed denied due to his inaction. The letter further explained that Singleton was, in any event, ineligible for disability benefits because he was never disabled during the time that he was an active Champion employee, a period that did not include the administrative leave directly preceding his termination.

4

On March 31, 2000, Singleton requested an internal review of the Plans' denial of benefits. The Plans agreed, noting that the administrative appeal would be "in furtherance of ERISA's requirements that plan participants and beneficiaries be extended full and fair review of benefit claims." On June 15, 2000, the Plans' Claims Review Committee convened to consider Singleton's appeal and upheld the initial denial of disability benefits. According to a letter sent to Singleton the following day, Singleton was ineligible because "he [had] requested disability benefits" during his administrative leave, when he was not an active employee and thus not covered by the disability plans. The letter also indicated that the now-resolved appeal "constituted [Singleton's] final appeal as required by [ERISA]."

Singleton filed suit in federal court on March 20, 2003, contending that the Plans improperly denied him benefits and that they breached their fiduciary duties.[1] The district court concluded that Singleton's claims were time-barred.[2] This appeal followed.

---

[1]We have reviewed with care Singleton's claims that the Plans breached their fiduciary duties, and find them to be without merit.

[2]We hold that Singleton timely filed his claim for benefits in federal court. ERISA contains no limitations period for private causes of action for plan benefits, and federal courts thus look to the most analogous state statute of limitations. See, e.g., Rodriquez v. MEBA Pension Trust, 872 F.2d 69, 73 n.1 (4th Cir. 1989). The parties agree that North Carolina's three-year limitations period for breach of contract is the proper analogy here. See N.C. Gen. Stat. § 1-52(1) (2005).

Under ERISA, employee benefit plans must provide claimants with "a full and fair review" of a denial of benefits, 29 U.S.C. §

II.

Champion's temporary and long-term disability policies vest the Plans with discretion both to determine benefits eligibility and to construe plan terms.  Under these circumstances, we review the Plans' denial of benefits for abuse of discretion, "asking whether the denial of benefits was reasonable."  Stup v. UNUM Life Ins. Co. of Am., 390 F.3d 301, 307 (4th Cir. 2004); see also Baker

---

1133(2) (2000); see also 29 C.F.R. § 2560.503-1(h) (2005); Gayle v. United Parcel Serv., 401 F.3d 222, 225 (4th Cir. 2005), and a plan participant "must both pursue and exhaust plan remedies before gaining access to the federal courts," Gayle, 401 F.3d at 226.  The statute of limitations thus does not ordinarily begin to run until the statutorily mandated internal appeals process is exhausted. See, e.g., Thomas v. Eastman Kodak Co., 183 F.3d 38, 52 (1st Cir. 1999) (collecting cases); Mason v. Aetna Life Ins. Co., 901 F.2d 662, 664 (8th Cir. 1990) (per curiam); Dameron v. Sinai Hosp. of Balt., Inc., 815 F.2d 975, 981-82 & n.7 (4th Cir. 1987) (measuring initiation of the statute of limitations from the notice of the denial of an internal appeal); Kemp v. Control Data Corp., 785 F. Supp. 74, 76 (D. Md. 1991); see also Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 325 (2d Cir. 2004) (collecting cases). Activating the statute of limitations before a required internal review has run its course would start the clock at a time when a claimant could not file suit, and would only serve to undermine "the strong federal policy encouraging private resolution of ERISA-related disputes."  Gayle, 401 F.3d at 228 (internal quotation marks omitted).  There is also little concern for undue delay in these situations, because plans may limit the time for filing internal appeals, see, e.g., 29 C.F.R. § 2560.503-1(h)(2)(I), and a failure to timely file such an appeal is considered a failure to exhaust administrative remedies, see Gayle, 401 F.3d at 226.  The Plans do not contend that Singleton failed to exhaust his administrative remedies here.

Rather, in this case the Plans conducted an internal review of the initial denial of benefits on June 15, 2000 -- a review they acknowledged was "in furtherance of ERISA's requirement[]" of an administrative appeal -- and the following day apprised Singleton of their decision upholding the initial denial of benefits. Singleton filed suit in federal court on March 20, 2003, within the three-year statute of limitations.

v. Provident Life & Accident Ins. Co., 171 F.3d 939, 941 (4th Cir. 1999). "An administrator's decision is reasonable 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" Stup, 390 F.3d at 307 (quoting Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995)).

On the record before us, we cannot conclude that the Plans' denial of benefits was reasonable. In the first place, there is significant confusion about the basis for the denial. In their January 31, 2000 letter, the Plans stated that they were denying benefits to Singleton because he was never disabled at the time that he was an active employee, and that he was not an active employee while on administrative leave. When denying his internal appeal in June 2000, however, the Plans switched gears, explaining that they were denying benefits because Singleton "was not an active employee when he requested disability benefits." In fact, the Plans indicated that only the timing of his application was relevant, because "[t]he issue in this case is not whether Mr. Singleton was or is disabled." The Plans continued to maintain this position in the proceedings in the court below, stating in their pleadings that Singleton was denied benefits because he "was not an active employee eligible for benefits at the time he applied for disability benefits." In this appeal, the Plans reversed course once again, and now concede that the proper inquiry for

7

benefits eligibility is not whether Singleton requested benefits when he was an active Champion employee, but rather whether he became disabled during that time. This view, however, was never consistently adhered to in the administrative process. See 29 U.S.C. § 1133(1) (2000) (plan administrator must "set[] forth the specific reasons" for denying benefits "in a manner calculated to be understood by the participant").

Relatedly, the Plans have never addressed evidence in the record tending to show that Singleton may have suffered from depression prior to being placed on administrative leave. In the September 19, 1996 letter to the Board of Directors, for example, Singleton indicated that he had experienced depression "for some time," and that this depression caused the problems identified in the bank audit. A letter dated September 18, 1996 from Singleton's pastoral counselor, Diane Stamey, likewise states that "[b]ecause of the severity of his depression, I believe that [Singleton] has been depressed for at least a year, if not longer." On November 17, 1996, Stamey submitted a revised letter indicating that after treating both Singleton and his wife over the past several months, "[i]n retrospect, in my professional opinion, Mr. Singleton has probably been depressed for approximately two years." This view is corroborated by a letter from Dr. T. Glen Snyder, a psychiatrist, who in November 1996 wrote that after evaluating Singleton, "I suspect that in fact [he] has been depressed for a couple of

8

years." Nothing in the Plans' correspondence with Singleton indicates that they have considered any of the above evidence, much less that they have addressed whether Singleton was disabled prior to being placed on administrative leave.

The administrative process in this case was thus not a clean one, but we note that Singleton himself is partly to blame. Singleton at times diligently pursued his disability benefits, but at other points treated them with an almost lackadaisical disinterest. He waited until over a year after his termination from Champion to inquire further about his September 1996 letter. And when the Plans responded with a request for additional information in January 1998, he was silent for close to two years. Under these circumstances, the proper course is to send this case back to square one. We thus remand the case to the district court with directions to remand it to the Plans for an appropriate determination of Singleton's eligibility for disability benefits, see Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1007 n.4 (4th Cir. 1985). We express no opinion on whether Singleton is in fact entitled to disability benefits, a decision vested in the first instance in the sound discretion of the plan administrator.

### III.

For the foregoing reasons, we reverse the judgment of the district court and remand for proceedings consistent with this opinion.

REVERSED AND REMANDED