**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 15-1160**

———————————

DENNIS WALTER BOND, SR.; MICHAEL P. STEIGMAN,

            Plaintiffs – Appellants,

        and

ROBERT J. ENGLAND; LEWIS F. FOSTER; DOUGLAS W. CRAIG, Individually, and on behalf of all others similarly situated,

            Plaintiffs,

        v.

MARRIOTT INTERNATIONAL, INC.; MARRIOTT INTERNATIONAL, INC. STOCK AND CASH INCENTIVE PLAN,

            Defendants – Appellees.

-------------------------

UNITED STATES SECRETARY OF LABOR,

            Amicus Supporting Appellants,

AMERICAN BENEFITS COUNCIL; CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; ERISA INDUSTRY COMMITTEE,

            Amicus Supporting Appellees.

———————————

**No. 15-1199**

———————————

DENNIS WALTER BOND, SR.; MICHAEL P. STEIGMAN,

            Plaintiffs – Appellees,

and

ROBERT J. ENGLAND; LEWIS F. FOSTER; DOUGLAS W. CRAIG, Individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

MARRIOTT INTERNATIONAL, INC.; MARRIOTT INTERNATIONAL, INC. STOCK AND CASH INCENTIVE PLAN,

Defendants – Appellants.

------------------------

UNITED STATES SECRETARY OF LABOR,

Amicus Supporting Appellees,

AMERICAN BENEFITS COUNCIL; CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; ERISA INDUSTRY COMMITTEE,

Amicus Supporting Appellants.

———————

Appeals from the United States District Court for the District of Maryland, at Greenbelt.  Roger W. Titus, Senior District Judge.  (8:10-cv-01256-RWT)

———————

Argued:  October 28, 2015          Decided:  January 29, 2016

———————

Before SHEDD, DIAZ, and HARRIS, Circuit Judges.

———————

Reversed in part and vacated in part; judgment affirmed by unpublished per curiam opinion.

———————

**ARGUED:** David C. Frederick, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C., Washington, D.C., for Appellants/Cross-Appellees.  Jeffrey Lee Poston, CROWELL & MORING LLP, Washington, D.C., for Appellees/Cross-Appellants.  David Maurice

Ellis, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus United States Secretary of Labor. **ON BRIEF:** Michael Klenov, KOREIN TILLERY, L.L.C., St. Louis, Missouri; Timothy F. Maloney, JOSEPH, GREENWALD & LAAKE, P.A., Greenbelt, Maryland; Joshua D. Branson, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C., Washington, D.C., for Appellants/Cross-Appellees. Mark Muedeking, Washington, D.C., Ian C. Taylor, DLA PIPER LLP (US), Baltimore, Maryland; Clifton S. Elgarten, Aryeh S. Portnoy, April N. Ross, CROWELL & MORING LLP, Washington, D.C., for Appellees/Cross-Appellants. M. Patricia Smith, Solicitor of Labor, G. William Scott, Associate Solicitor for Plan Benefits Security, Elizabeth Hopkins, Counsel for Appellate and Special Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus United States Secretary of Labor. Janet M. Jacobson, AMERICAN BENEFITS COUNCIL, Washington, D.C.; Kate Comerford Todd, Warren Postman, U.S. CHAMBER LITIGATION CENTER, Washington, D.C.; Annette Guarisco Fildes, Kathryn Ricard, THE ERISA INDUSTRY COMMITTEE, Washington, D.C.; Igor V. Timofeyev, Stephen B. Kinnaird, J. Mark Poerio, Danielle R.A. Susanj, PAUL HASTINGS LLP, Washington, D.C., for Amici The American Benefits Council, The Chamber of Commerce of the United States of America, and The ERISA Industry Committee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Dennis Bond and Michael Steigman (the Appellants), filed this action against their former employer, Marriott International, Inc., alleging that Marriott's Deferred Stock Incentive Plan (the Plan), a tax-deferred Retirement Award program, violates the vesting requirements of the Employee Retirement and Income Security Act of 1974 (ERISA). After targeted discovery on the statute of limitations, the district court found that the claims were timely and granted summary judgment to the Appellants on that issue. Following additional discovery, the court granted summary judgment on the merits to Marriott, concluding that the Plan's Retirement Awards fell within the "top hat" exemption to ERISA. The Appellants appeal that ruling, and Marriott cross-appeals, contending that the court erred in finding the Appellants' claims timely. Because we conclude that the Appellants' claims are barred by the statute of limitations, we affirm judgment in favor of Marriott.

I.

A. The 1970 Plan

Marriott created the Plan in 1970, prior to ERISA's enactment. The 1970 Plan remained in effect until 1978 and granted Retirement Awards "as a part of a management incentive program whereby a portion of the annual bonus awarded to managers and other employees for outstanding performances is

4

made in the form of deferred stock." (J.A. 93). Retirement Awards "contingently vest[ed] in equal annual installments until age 65" or fully upon approved early retirement, permanent disability, or death. (J.A. 94). The 1970 Plan expressly provided that "[v]esting accruals stop when employment terminates for any other reason." (J.A. 94). Marriott distributed vested shares in "ten annual installments after retirement, permanent disability or upon reaching age 65" as long as the employee refrained from "competing, directly or indirectly, with the Company for a period of ten years after retirement or after age 65 if employment is terminated while in good standing prior to retirement." (J.A. 94). Each recipient received an Award Certificate explaining the vesting schedule.

The 1970 Plan was open to "any employee . . . whether full-time or part-time," including "manager[s] and other employees" with "outstanding performances." (J.A. 93). During the relevant time period, in Marriott's workforce, salaried employees comprised about 10% of all employees, and somewhere between 83% and 91.5% of these salaried employees qualified as "managers." Management employees were paid on a salary scale that encompassed a vast number of grades—from 39 to the low 70s. Grade 56 and above was limited to "executive" managers and grade 61 and above for "senior executives."

5

Using an internal four-step process, between 1976 and 1989 Marriott issued Retirement Awards to no more than 1.63% of all Marriott employees. Marriott issued roughly 33,000 awards in total to almost 10,000 unique individuals, 93% of which were below grade 56 (executive managers). The individuals held 1,386 unique job titles, including Route Driver, Storekeeper, Tennis Pro, and Assistant Night Trainee. In every year but one, at least one Retirement Award recipient totaled $0 gross earnings.

### B. ERISA

In 1974, "after careful study of private retirement pension plans," Congress enacted ERISA. Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 510 (1981). "Congress through ERISA wanted to ensure that 'if a worker has been promised a defined pension benefit upon retirement-and if he has fulfilled whatever conditions are required to obtain a vested benefit- . . . he actually receives it.'" Id. (quoting Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 375 (1980)). Congress thus imposed a variety of new requirements on covered retirement and pension plans. See 29 U.S.C. § 1001(a). Relevant here, Congress prohibited the type of vesting schedule present in the Plan and also prohibited "bad boy" clauses, such as the competition restrictions in the Plan.

Tucked inside ERISA's vast statutory text, however, was an exemption for so-called "top hat" plans. ERISA defines a top hat

6

plan as an unfunded plan that is "maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2).[1] Top hat plans receive a "near-complete exemption" from "ERISA's substantive requirements," In re New Valley Corp., 89 F.3d 143, 148 (3d Cir. 1996), and "are not subject to certain vesting, participation, and fiduciary requirements," Kemmerer v. ICI Americas Inc., 70 F.3d 281, 286 (3d Cir. 1995). Given the breadth of this exemption, the category of what qualifies as a top hat plan is a "narrow one." New Valley Corp., 89 F.3d at 148. That is, a top hat plan "must" "be unfunded and exhibit the required purpose" and "must also cover a 'select group' of employees." Id. Whether the group of employees is "select" is determined by looking both

---

[1] The Department of Labor (DOL) has never issued notice-and-comment rules regarding the top hat exemption. In 1990, DOL issued an Advisory Opinion interpreting the "unfunded" requirement of the top hat provision. Dep't of Labor, Opinion 90-14A, 1990 WL 123933 (May 8, 1990). DOL explained that top hat plan participants must have the ability to "affect or substantially influence . . . their deferred compensation plan." Id. at *1. In addition, DOL stated that it interpreted the word "primarily" in the top hat provision to modify "for the purpose of providing deferred compensation" and not "for a select group of management or highly compensated employees." Id. at *2, n.1. Thus, in DOL's view, the top hat exemption was limited to a "select group of management or highly compensated employees" who had negotiating power to negotiate the terms of their top hat plan. Id. DOL filed an amicus brief in this case defending this interpretation.

qualitatively and quantitatively. <u>Demery v. Extebank Deferred Comp. Plan (B)</u>, 216 F.3d 283, 288 (2d Cir. 2000). Thus, "[i]n number, the plan must cover relatively few employees. In character, the plan must cover only high level employees." <u>New Valley Corp.</u>, 89 F.3d at 148.

### C. The Amended Plan

Following ERISA's enactment, Marriott internally determined that the 1970 Plan was a top hat plan. Also, in 1978, Marriott altered the Retirement Awards in response to requests from management, particularly younger managers who did not like the long vesting period. Marriott responded by adding an option for employees to choose either a Retirement Award or an award that vested and was paid over a period of ten years during employment (a "Pre-Retirement Award").

After Marriott adopted the 1978 Plan, it drafted a lengthy Prospectus, which it mailed to all management employees eligible to receive Retirement Awards and filed with the Securities and Exchange Commission. The Prospectus described the Retirement Awards program and, in a section titled "ERISA," disclosed the following:

> The Incentive Plan is an 'employee pension benefit plan' within the meaning of the Employee Retirement Income Security Act of 1974 (the 'Act'). However, inasmuch as the Plan is unfunded and is maintained by the Company primarily for the purpose of providing deferred compensation for a selected group of management or highly compensated employees, it is

8

> deemed a 'select plan' and thus is exempt from the participation and vesting, funding and fiduciary responsibility provisions of Parts 2, 3 and 4 respectively of Subtitle B of Title 1 of the Act.

(J.A. 298). The Prospectus explained that Marriott "will not extend to participants any of the protective provisions of the Act for which an exemption may properly be claimed." (J.A. 298). Additional prospectuses with this language were distributed in 1980, 1986, and 1991, and the Appellants do not dispute that they received them.

In 1990, following an Advisory Opinion from the Department of Labor, supra note 1, Marriott amended the 1978 Plan to limit Retirement Awards to executive managers—those at pay grade 56 or above. Managers with a pay grade below 56 were eligible only for Pre-Retirement Awards. Marriott viewed such a change as "necessary in light of changing government interpretations of provisions in [ERISA]," and noted that by "narrowing" the circumstances of award availability "helps ensure the continued application of this favorable treatment under ERISA". (J.A. 934).

## D. The Appellants' Tenure with Marriott

The Appellants had long and successful careers with Marriott. Bond joined Marriott in 1973 as an Assistant Sales Manager at the Airport Marriott in St. Louis and eventually rose to become the General Manager of the Marriott Pavilion in St.

9

Louis until his resignation in 1992. From 1976, when he was promoted to Director of Sales and Marketing of the City Line Avenue Marriott in Philadelphia, until he left Marriott, Bond occupied positions eligible for Retirement Awards under the Plan. Bond received Retirement Awards from Marriott in 1976 and 1977 (as Director of Sales and Marketing), in 1978 and 1979 (as Regional Director of Marketing), and in 1988 and 1989 (as General Manager of the St. Louis Marriott). In total, Bond was awarded 1,344 shares of Marriott stock through Retirement Awards. Bond voluntarily resigned from Marriott on October 19, 1991, two years before his awards would have fully vested. In 2006, Marriott paid Bond all of his vested shares.

Steigman joined Marriott in 1973 as an Assistant Restaurant Manager for the Capriccio Restaurant at the Los Angeles Marriott, and eventually served as the General Manager of the Bloomington, Minnesota, Marriott, and later of the Miami Airport Marriott, until Marriott terminated him in 1991. Steigman received Retirement Awards from Marriott in 1974 and 1975, both prior to ERISA's effective date. In 1978 and every year thereafter, Steigman elected to receive Pre-Retirement Awards under the 1978 Plan. Marriott granted Steigman 693 shares of Marriott stock under the Retirement Award program between 1978 and 1989. Shortly after his termination in 1991, Steigman signed a release and Marriott paid him all of his vested shares.

10

E. Procedural History

The procedural history is recounted in detail in the district court's orders in this litigation. See Bond v. Marriott Int'l, Inc., 971 F.Supp.2d 480 (D. Md. 2013); England v. Marriott Int'l, Inc., 764 F.Supp.2d 761 (D. Md. 2011). As relevant here, on January 19, 2010, Bond, Robert England, Lewis Foster, and Douglas Craig filed suit in federal court in the District of Columbia, alleging that the Plan's Retirement Awards violated ERISA's vesting requirements. These plaintiffs sought equitable relief requiring Marriott to reform the Retirement Awards and pay additional benefits. The case was transferred to the District of Maryland, and only Steigman and Bond remain as named plaintiffs.[2]

Following targeted discovery, the parties filed cross-motions for summary judgment on whether the claims are barred by the statute of limitations. The district court granted judgment to the Appellants on the timeliness issue. Bond, 971 F.Supp.2d at 493. The court also denied Marriott's request to immediately certify the ruling for appeal under 28 U.S.C. § 1292(b). Id. at

---

[2] England's claim was dismissed because he left Marriott before ERISA's effective date. England v. Marriott Int'l, Inc., 764 F.Supp.2d 761, 780-81 (D. Md. 2011). Foster and Craig voluntarily dismissed their claims because they actually were awarded more shares under the Retirement Awards vesting schedule than they would have been awarded if ERISA's vesting schedule applied.

494-95. Following further discovery, Marriott moved for summary judgment, arguing that the Retirement Awards were issued pursuant to a valid top hat plan. After a lengthy hearing, the court granted the motion. Both sides filed timely appeals.

                                  II.

We begin and end with Marriott's cross-appeal, which contends that the district court erred in finding the Appellants' claims timely. We review de novo the court's grant of summary judgment on this ground. Wilkins v. Montgomery, 751 F.3d 214, 220 (4th Cir. 2014).

Except for breach of fiduciary duty claims, ERISA contains no specific statute of limitations, and we therefore look to state law to find the most analogous limitations period. White v. Sun Life Assur. Co. of Canada, 488 F.3d 240, 245 (4th Cir. 2007) abrogated on other grounds by Heimeshoff v. Hartford Life & Acc. Ins. Co., 134 S.Ct. 604 (2013). Here, we agree with the parties that Maryland's three year statute of limitations for contract actions applies. However, while we apply this three-year state limitations period, the question of when the statute begins to run is a matter of federal law. Id. In most cases "[a]n ERISA cause of action does not accrue until a claim of benefits has been made and formally denied." Rodriguez v. MEBA Pension Tr., 872 F.2d 69, 72 (4th Cir. 1989).

                                  12

Here, applying this "formal denial" rule, the district court concluded that the action is timely because Marriott never formally denied any claims from Bond or Steigman. In so ruling, the court apparently adopted the Appellants' position that Marriott's answer to the federal complaint triggered the limitations period.

On appeal, Marriott argues, as it did below, that the district court applied the wrong analysis. We agree. While the "formal denial" rule is generally applied in ERISA cases, we recognized, just one year after Rodriguez, that in limited circumstances the rule is impractical to use. See Cotter v. E. Conference of Teamsters Ret. Plan, 898 F.2d 424, 429 (4th Cir. 1990). In Cotter, we considered the question of when the statute of limitations period begins in ERISA cases that did not involve an internal review process and a formal claim denial. We explained that while Rodriguez's "mandate is clear," its "application . . . is tricky" in cases with no formal denial. Id. We noted that in such cases strict application of Rodriguez "would lead us to the anomalous result that the statute of limitations . . . did not begin to run until after [the plaintiff's] lawsuit was filed." Id.[3] To avoid this result and

---

[3] In one of its earlier orders in this litigation, the district court concluded that the "anomaly" we recognized in Cotter "may here be the reality." England, 764 F.Supp.2d at 772.

13

remain "consistent" with Rodriguez, we applied the "alternative approach of determining the time at which some event other than a denial of a claim should have alerted [the plaintiff] to his entitlement to the benefits he did not receive." Id. Under this approach, "a formal denial is not required if there has already been a repudiation of the benefits by the fiduciary which was clear and made known to the beneficiary." Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 520-21 (3d Cir. 2007) (emphasis in original); see also Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 47 (2d Cir. 1999) (collecting cases applying the clear repudiation rule from the Seventh, Eighth, and Ninth Circuits).

The "clear repudiation" rule serves the goals of statutes of limitations, to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared," Order of R.R. Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348-49 (1944), and to encourage "rapid resolution of disputes," Carey, 201 F.3d at 47. These goals "are served when the accrual date anchors the limitations

14

period to a plaintiff's reasonable discovery of actionable harm," Miller, 475 F.3d at 522.[4]

Applying this rule here, we conclude that the Appellants' claims are untimely. To begin, the 1978 Prospectus—in a section entitled "ERISA"—plainly stated that the Retirement Awards did not need to comply with ERISA's vesting requirements. The Prospectus explained that "inasmuch as the Plan is unfunded and is maintained by the Company primarily for the purpose of providing deferred compensation for a selected group of management or highly compensated employees," the Plan was a top hat plan "exempt from the participation and vesting, funding and fiduciary responsibility provisions" of ERISA. (J.A. 298). This language clearly informed plan participants that the Retirement Awards were not subject to ERISA's vesting requirements, the very claim made by the Appellants here. This language was included in prospectuses distributed in 1980, 1986, and 1991.

The Appellants' claim is that the Retirement Awards violate ERISA's vesting schedule and that Marriott essentially admitted this violation in response to the DOL's Advisory Opinion in

---

[4] Applying a discovery rule in this context is consistent with ERISA. In fact, ERISA's statute of limitations for breach of fiduciary duty claims likewise includes a discovery rule. See 29 U.S.C. § 1113(2) (stating limitations period runs from "the earliest date on which the plaintiff had actual knowledge of the breach or violation").

1990. See Appellant's Br. at 26 (arguing that Marriott's 1990 plan amendment was "an admission that the prior Plan was deficient"). That argument, however, undermines their contention that Marriott does not satisfy the clear repudiation standard. Marriott informed the Appellants in 1978 that the Plan was exempt from ERISA's vesting requirements. The Appellants then waited more than 30 years to file suit, alleging that the Plan violates ERISA's vesting requirements. While the discovery rule "serve[s] to soften the hard edges of statutory limitations periods," "[c]ommencement of a limitations period need not . . . await the dawn of complete awareness." Brumbaugh v. Princeton Partners, 985 F.2d 157, 162 (4th Cir. 1993). Here, Marriott clearly repudiated any right the Appellants had to the vesting requirements of ERISA in 1978.[5]

## III.

For the foregoing reasons, we conclude that the Appellants' ERISA claims are untimely under Maryland's three-year statute of limitations for contract actions. We therefore reverse the district court's grant of summary judgment to the Appellants on that ground and grant summary judgment to Marriott. Because this conclusion is dispositive and we do not reach the question of

---

[5] The Appellants also argue that the statute of limitations should be equitably tolled in this case. Having reviewed this argument, we find it to be without merit.

whether Marriott's Plan was a valid top hat plan, we vacate the court's later order granting summary judgment to Marriott. In light of these rulings, we affirm the judgment in Marriott's favor.

REVERSED IN PART AND VACATED IN PART;
JUDGMENT AFFIRMED
