**James KELSO, Plaintiff–Appellant,**

v.

**GENERAL AMERICAN LIFE INSURANCE COMPANY, a domesticated insurance corporation, Defendant–Appellee.**

No. 91–5090.

United States Court of Appeals,
Tenth Circuit.

June 16, 1992.

Steven R. Hickman, of Frasier & Frasier, Tulsa, Okl., for plaintiff-appellant.

David B. McKinney and R. David Whitaker of Boesche, McDermott & Eskridge, Tulsa, Okl., for defendant-appellee.

Before MOORE, TACHA, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Plaintiff James Kelso appeals from an order of the district court granting Defendant General American Life Insurance Company's motion for summary judgment.[1] We affirm.

General American issued a group health policy and a group life and disability policy to Division Fintube Corporation. Kelso's wife was eligible for coverage under both policies without proof of insurability for the initial thirty-one days of her employment.[2] She did not elect coverage at that time because she was covered under her husband's policy.

After Kelso left his employment, Mrs. Kelso elected to enroll for coverage under General American's policies. One of the requirements for late enrollment was sub-mission of a proof of insurability. Mrs. Kelso admittedly did not submit this proof. Shortly thereafter, Mrs. Kelso was diagnosed with terminal liver cancer.[3] General American paid over $30,000.00 in medical expenses. After Mrs. Kelso's death, General American discovered she had not filed a proof of insurability statement. General American then denied Kelso's claim for additional medical benefits of $1,500.00 and life insurance benefits of $20,000.00.

Kelso commenced this action in state court to obtain the denied benefits. General American removed the action to federal court on the ground that the action was preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. After removal, General American moved for summary judgment. The district court granted the motion holding that the plan was an employee benefit plan and subject to ERISA. The court held that Kelso's claims were preempted.

On appeal, Kelso argues the district court erred in holding his claims preempted because, even though the plan was an employee benefit plan, it was not self-insured and, therefore, was subject to state law. Kelso argues that under state law, General American is liable. Finally, Kelso argues that this court should reexamine *Kelley v. Sears, Roebuck & Co.*, 882 F.2d 453 (10th Cir.1989), in light of *FMC Corp. v. Holliday*, —— U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990).

We review the district court's determination of preemption under ERISA de novo. *See National Elevator Indus., Inc. v. Calhoon*, 957 F.2d 1555, 1557 (10th Cir. 1992) (citing *Local Union 598, Plumbers & Pipefitters Indus. Journeymen & Appren-*

---

**1.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

**2.** Mrs. Kelso was employed as the internal plan administrator. She administered the enrollment of employees and processing of claims for submission to General American.

**3.** Mrs. Kelso had earlier been diagnosed with breast cancer, but apparently had been successfully treated. The liver cancer was not considered related to her breast cancer. General American stated, however, that had the proof of insurability been submitted, Mrs. Kelso would not have been eligible for coverage because of her prior history of breast cancer.

*tices Training Fund v. J.A. Jones Constr. Co.*, 846 F.2d 1213, 1218 (9th Cir.), *aff'd*, 488 U.S. 881, 109 S.Ct. 210, 102 L.Ed.2d 202 (1988)).

ERISA was enacted to "ensure that [employee benefit] plans and plan sponsors would be subject to a uniform body of benefit law," thus preventing inefficiencies which "could work to the detriment of plan beneficiaries." *Ingersoll–Rand Co. v. McClendon,* —— U.S. ——, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990). Therefore, ERISA "comprehensively regulates employee pension and welfare plans." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985).

In 29 U.S.C. § 1144(a), Congress established preemption of "all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered under the statute, except as noted in § 1144(b). *See National Elevator,* 957 F.2d at 1557. Section 1144(a) is "deliberately expansive," and the statutory phrase "relate to" is given a "broad common-sense meaning." *Settles v. Golden Rule Ins. Co.,* 927 F.2d 505, 508 (10th Cir.1991) (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 47, 107 S.Ct. 1549, 1552, 1553, 95 L.Ed.2d 39 (1987)). A law relates to a benefit plan " ' "if it has a connection with or reference to such a plan." ' " *Id.* (quoting *Metropolitan Life,* 471 U.S. at 739, 105 S.Ct. at 2389 (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97–98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983))).

In his state court petition, Kelso alleged in pertinent part:

## II.

In February, 1988, Plaintiff's decedent, Jo Kelso,[4] became insured by Defendant for life insurance benefits in the sum of $20,000.00, having paid the premium thereon from that time forward until her death in December, 1988.

## III.

At the time of the death of Jo Kelso, all payments had been made to Defendant for the policy of insurance, and upon the death of Jo Kelso, Plaintiff, as beneficiary under the insurance policy, became entitled to the payment of the said $20,000.00.

## IV.

Demand has been made upon Defendant to pay the insurance benefits contracted for, but Defendant has wholly failed, refused and neglected to pay same.

## V.

Additionally, Plaintiff's decedent, Jo Kelso, was insured under other provisions of the insurance policy for medical and other benefits, which have not been paid by Defendant, the amounts of which are estimated to be $1,500.00.

Appellant's App. at 1–2.[5]

■ Kelso alleged a common law breach of contract claim which is related to the benefit plan. Preemption applies to common law contract and tort claims if the factual basis of the cause of action involves an employee benefit plan. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62, 107 S.Ct. 1542, 1545, 95 L.Ed.2d 55 (1987); *Settles,* 927 F.2d at 509. Kelso's claim is preempted.

■ In his response to General American's motion for summary judgment and in his brief on appeal, Kelso argues that General American misrepresented to the Kelso's that Mrs. Kelso was eligible for coverage under its policies by accepting payment of premiums from Mrs. Kelso's employer on her behalf. Kelso argues that in re-

---

4. In this petition, Kelso's wife is referred to as Jo. Throughout the rest of the record and on appeal she is referred to as Joan.

5. There is no indication in the record that Kelso amended his complaint after removal to include claims cognizable under ERISA. *See* 29 U.S.C. § 1132(a)(1)(B) (civil action may be brought by plan participant or beneficiary to recover benefits due under the plan, to enforce rights under the plan, or to clarify rights to future benefits).

liance on this misrepresentation, he did not exercise his right to continued insurance coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161–1168 (COBRA). Kelso argues that the exercise of his COBRA rights would have provided undisputed insurance coverage for Mrs. Kelso's illness. This claim of misrepresentation on the part of General American also arises under state common law and is preempted.

Also in his response to General American's motion for summary judgment and in his brief on appeal, Kelso argued that General American violated Okla.Stat. tit. 15, §§ 233, 235, addressing contract law on rescission, and Okla.Stat. tit. 36, § 1423, defining the status of an insurance agent.

In § 1144(b), Congress provided a savings clause that exempts state laws regulating the insurance industry from the general preemption clause of § 1144(a). *See* 29 U.S.C. § 1144(b)(2)(A) (nothing in ERISA "shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities"[6]); *see also Holliday*, 111 S.Ct. at 409, 411 (insurance company not relieved from state insurance regulation because "saving clause retains the independent effect of protecting state insurance regulation of insurance contracts purchased by employee benefit plans"); *Metropolitan Life*, 471 U.S. at 732, 105 S.Ct. at 2385.

" '[I]n order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry.' " *Metropolitan Life Ins. Co. v. Hanslip*, 939 F.2d 904, 907 (10th Cir.1991) (quoting *Pilot Life*, 481 U.S. at 50, 107 S.Ct. at 1554). In deciding whether a state law regulates insurance

> [T]he court first considers a "common sense view" of the language of the saving clause. Second, it determines whether the cause of action falls under the "business of insurance," applying three criteria:

> (1) whether the state law has the effect of transferring or spreading a policyholder's risk;

> (2) whether the state law is an integral part of the policy relationship between the insurer and the insured; and

> (3) whether the state law is limited to entities within the insurance industry.

*Hanslip*, 939 F.2d at 907 (quoting *Kelley*, 882 F.2d at 456 (which cited *Pilot Life*, 481 U.S. at 48–49, 107 S.Ct. at 1553)).

Clearly, Okla.Stat. tit. 15, §§ 233, 235 do not regulate insurance and is not saved from preemption. While Okla.Stat. tit. 36, § 1423 might facially appear to be saved, "the injury alleged was a direct result of the termination of plan benefits and cannot be characterized as 'wholly remote' from the benefit plan," *Settles*, 927 F.2d at 509, and thus does not meet the criteria of *Hanslip*. *See Hanslip*, 939 F.2d at 906 (law "relates to" employee benefit plan if it has connection with or reference to plan; under "broad common sense meaning," state law may "relate to" benefit plan, and be preempted, even if law not specifically designed to affect such plans, or effect is only indirect (citing *Ingersoll–Rand*, 111 S.Ct. at 483)).

Kelso argues that the Supreme Court in *Holliday* held that the preemption clause applies only to self-insured plans. We do not agree that *Holliday* stands for this proposition. *See Holliday*, 111 S.Ct. at 411 (if plan is insured, state may regulate it indirectly through regulation of insurer and insurer's insurance contracts).

We decline Kelso's invitation to reexamine *Kelley*. In view of our discussion above, it is clear that *Kelley* is consistent with the Supreme Court's holding in *Holliday*.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

---

**6.** One specified exception to the saving clause is found in 29 U.S.C. § 1144(b)(2)(B), the "deemer clause," which states that no employee-benefit plan "shall be deemed to be an insurance company ... for purposes of any law of any State purporting to regulate insurance companies...." This clause is inapplicable here.