**Raymond B. HEMPHILL, Plaintiff,**

v.

**UNISYS CORPORATION, Defendant.**

Civ. No. 93–C–0163S.

United States District Court,
D. Utah,
Central Division.

June 10, 1994.

Mark R. McDougal, Don R. Schow, Mark R. McDougal & Associates, Salt Lake City, UT, for plaintiff.

Chris Wangsgard, David W. Zimmerman, Parsons, Behle & Latimer, Salt Lake City, UT, Aaron A. Nelson, Hanson, Nelson, Chipman & Quigley, Salt Lake City, UT, Thomas R. Lee, Kimball, Parr, Waddoups, Brown & Gee, Salt Lake City, UT, for defendant.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE THE AFFIDAVIT OF RAYMOND B. HEMPHILL

SAM, District Judge.

This matter came before the court on motions of the defendant Unisys Corporation ("Unisys") for summary judgment on all of the plaintiff's remaining claims and for an order striking portions of the plaintiff's affidavit which was submitted in opposition to the motion for summary judgment. For reasons discussed more fully below, both motions are granted in part and denied in part.

*I. BACKGROUND*

The plaintiff, Raymond B. Hemphill ("Hemphill"), was injured in an automobile accident on or about September 18, 1988. At the time, his vehicle was insured by Farmers Insurance Company ("Farmers"). He had a contract for health insurance with his employer, Unisys, and a health care provider, Alta Health Strategies, Inc. ("Alta"). Hemphill sought payment for medical expenses, long-term disability, and other benefits, but some of these benefits were denied. He then sued Farmers, Unisys, and Alta in state court, alleging breach of contract, breach of a duty of good faith, and related claims.

Unisys and Alta removed the action to federal court on grounds of ERISA preemption (¶ 2, Amended Notice of Removal). All of Hemphill's claims against Alta and his claim for punitive damages against Unisys were dismissed by stipulation of the parties; his claims against Farmers were remanded to state court.

The remaining claims against Unisys are not clearly identified in the complaint but are set forth as a single cause of action against all the defendants. Hemphill does allege, *inter alia*, that Unisys "breached the contract of insurance" (¶¶ 13–15) and breached a "duty to act in good faith" (¶¶ 16–17).

Unisys argues that it is entitled to summary judgment because these state law claims are preempted by ERISA. In addition, Unisys details the type of benefits which Hemphill sought and was denied, and explains why a claim under ERISA for each type of benefit must fail. Unisys argues that a claim to recover benefits for home care is barred by the applicable statute of limitations; that claims to recover benefits for home care, incontinence pads, and bladder control undergarments are governed by an "abuse of discretion" standard, and that the plan administrator did not abuse its discretion in denying these claims; that claims to recover benefits for reconstructive surgery and long-term disability are barred for failure to exhaust administrative remedies and because Hemphill is no longer a "participant" in the relevant plans; and that a claim to recover long-term disability benefits is not available because Hemphill has returned to work.

Hemphill responds that Unisys "has presented no evidence to establish [the Unisys Medical] Plan as an ERISA plan," but, in any event, his complaint does state an ERISA claim; that his claim for benefits for home care is not time-barred; and that there are genuine issues of material fact which preclude summary judgment on his claims to recover various kinds of benefits. (Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment, at 4).

## II. DISCUSSION

### A. Motion for summary judgment

#### 1. Whether ERISA governs Hemphill's claims

■ The question whether the "contract of insurance" referred to in Hemphill's complaint is governed by ERISA, is a threshold issue. *See Peckham v. Gem State Mut. of Utah,* 964 F.2d 1043, 1046 (10th Cir.1992). ERISA governs "employee benefit plan[s]." 29 U.S.C. § 1003(a). One kind of employee benefit plan is an "employee welfare benefit plan," which is defined as:

> any plan, fund or program ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, [or] disability ...

29 U.S.C. § 1002(1) (1988). This definition has been broken into five elements: (1) a plan, fund, or program (2) established or maintained (3) by an employer (4) for the purpose of providing medical, surgical, [or] hospital care benefits (5) to participants or their beneficiaries. *Peckham,* 964 F.2d at 1047 (citing *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982)).

The parties do not dispute that Hemphill had medical insurance under a policy provided by his employer, Unisys. Thus, elements (3), (4), and (5) are clearly satisfied. Whether this policy is a "plan, fund, or program established or maintained" by the employer, so that the first two elements are satisfied, is less obvious.

■ A "plan, fund, or program" under ERISA is established if "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits." *Peckham,* 964 F.2d at 1047 (quoting *Donovan,* 688 F.2d at 1373). With respect to Hemphill's policy, a reasonable person could ascertain

that the intended benefit is medical coverage, the intended beneficiaries are employees of Unisys and their dependents, financing is contributed by Unisys, and the procedures for receiving benefits are outlined in the Unisys Summary Plan Description Booklet ("SPD").[1] (*See* Ex. 1 to Affidavit of Mary Massman, at 83.)

A "plan" also requires an "ongoing administrative program." *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987). The Unisys Medical Plan has been administered by Aetna Life Insurance Company ("Aetna") since January 1, 1990. (¶ 1, Supplemental Affidavit of Abigail Countryman.)

■ As to the second element, a plan is "established or maintained" by an employer when the plan is part of an employment relationship. *Peckham,* 964 F.2d at 1049. According to a Department of Labor regulation, an ERISA plan is *not* established or maintained by an employer when all four of the following conditions are met:

1. No contributions to premiums are made by the employer on behalf of the employees;

2. Participation in the program is completely voluntary;

3. The sole functions of the employer with respect to the program are to permit the insurer to publicize the program to its employees and to collect and remit employees' premiums;

4. The employer receives no compensation in connection with the program.

29 C.F.R. § 2510.3(j).

■ Applying these definitions, courts have held as a matter of law that a plan which has the following three components is governed by ERISA:

> (1) a contractual arrangement between the employer and the insurance company for the provision of insurance to the employer's employees; (2) an eligibility requirement of being an employee ...; (3) the employer's contribution of some, but not

---

1. "The SPD also serves as the Plan Document for the Unisys Medical Plan." (¶ 7a, Massman Affidavit.)

all, of the insurance premiums on behalf of its employees.

*Hollister v. Molander,* 744 F.Supp. 846, 847 (N.D.Ill.1990). *See also Brundage–Peterson v. Compcare Health Servs. Inc.,* 877 F.2d 509, 511 (7th Cir.1989).

The Unisys Medical Plan (the "Plan") has these three components. It is administered as part of a contractual arrangement between Unisys and Aetna. (¶ 1, Countryman Supp. Affidavit.) Only full-time employees are eligible to participate. (SPD at 12.) Unisys contributes to the cost of the Plan in the form of "credits" for all employees. (SPD at 15.) [2]

The court therefore concludes that the Plan is an employee benefit plan governed by ERISA.

### 2. Whether Hemphill's state law claims are preempted

ERISA provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Thus, the scope of ERISA preemption is "very broad." *Straub v. Western Union Tel. Co.,* 851 F.2d 1262, 1263 (10th Cir.1988). *See also Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46–47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987); *Settles v. Golden Rule Ins. Co.,* 927 F.2d 505, 508 (10th Cir.1991).

■ Congress intended not only to *preempt* state law applicable to individual employee benefit rights, but to *displace* it with ERISA's civil enforcement provisions. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65–67, 107 S.Ct. 1542, 1547–48, 95 L.Ed.2d 55 (1987). Accordingly, an action is removable to federal court if the complaint may reasonably be characterized as stating a claim that could have been filed under one or more of ERISA's enforcement provisions. *Id.* The traditional "well-pleaded complaint" rule that determines the removability of an action in most fields of law is not controlling in ERISA cases. *Id.;* M. Wald & D. Kenty,

*ERISA: A Comprehensive Guide,* § 7.7 (1991 & Supp.1994).

If a state law claim is preempted by ERISA and within the scope of ERISA's civil enforcement provisions, the claim "will convert to a federal claim." *Carland v. Metropolitan Life Ins. Co.,* 935 F.2d 1114, 1119 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 670, 116 L.Ed.2d 761 (1991). This conversion of a state law claim into a federal claim is sometimes called "super preemption." *Brown v. Connecticut Gen. Life Ins. Co.,* 934 F.2d 1193, 1196 (11th Cir.1991). The effect of super preemption is not "to 'absorb' state law claims, allowing them to proceed unaffected in substance by the conversion," but to "completely eliminate" them—leaving plaintiffs only the causes of action expressly provided for in the ERISA civil enforcement provisions. *Amos v. Blue Cross–Blue Shield of Alabama,* 868 F.2d 430, 431–32 (11th Cir.), *cert. denied,* 493 U.S. 855, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989).

■ ERISA also has a savings clause that exempts state laws regulating the insurance industry from the general preemption clause. 29 U.S.C. § 1144(b). In deciding whether a state law regulates insurance, the court first considers a "common sense view" of the language of the saving clause. *Kelso v. General American Life Ins. Co.,* 967 F.2d 388, 391 (10th Cir.1992). Next, the court applies three criteria to determine whether the cause of action falls under the "business of insurance":

(1) whether the state law has the effect of transferring or spreading a policyholder's risk;

(2) whether the state law is an integral part of the policy relationship between the insurer and the insured; and

(3) whether the state law is limited to entities within the insurance industry.

*Id.; see Pilot Life,* 481 U.S. at 48–49, 107 S.Ct. at 1553–54.

■ Applying these principles, courts have often found that state law claims for breach of contract, which relate to an employee ben-

---

**2.** The Unisys Disability Plans do not have these three components. Long-term disability cover-

age is fully employee-paid. (SPD at 13.)

efit plan, are preempted. *Metropolitan Life,* 481 U.S. at 62, 107 S.Ct. at 1545–46; *Kelso,* 967 F.2d at 390; *Settles,* 927 F.2d at 509; *Straub,* 851 F.2d at 1264.

State law claims for bad faith denial of benefits under an employee benefit plan, have likewise been found preempted. *Pilot Life,* 481 U.S. at 48–51, 107 S.Ct. at 1553–55; *Carland,* 935 F.2d at 1119. Specifically, the Tenth Circuit agreed that a claim under Utah law for breach of a duty of good faith and fair dealing against an insurer was preempted by ERISA, in *Peckham,* 964 F.2d at 1049. *See also Tomczyk v. Blue Cross & Blue Shield,* 951 F.2d 771, 775 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 2274, 119 L.Ed.2d 201 (1992) (ERISA preempted claim of bad faith under Wisconsin law, despite argument that the law regulated insurance and, thus, fell within the ambit of ERISA's saving clause).

Because the court has concluded that Hemphill's state law claims of breach of contract and breach of a duty of good faith relate to an "employee benefit plan," they fall squarely within the ERISA preemption clause. Moreover, these claims are not saved from preemption; they are based on state common law which is not "specifically directed toward the [insurance] industry" and does not regulate the transaction of the "business of insurance." *Pilot Life,* 481 U.S. at 48–50, 107 S.Ct. at 1553–54.

Accordingly, Unisys is entitled to summary judgment on Hemphill's state law claims for breach of contract and breach of a duty of good faith.

### 3. Whether an ERISA claim is stated

The next issue is whether the complaint states a claim for relief under one of ERISA's civil enforcement provisions. *See Straub,* 851 F.2d at 1264–65 (affirming the district court's order granting summary judgment for the defendant because the plaintiff's preempted state law claims failed to state a claim for relief under ERISA); *Slice v. Norway,* 978 F.2d 1045, 1046–47 (8th Cir.1992) (district court erred in dismissing state law claims as preempted without determining whether allegations stated a federal claim for relief); *Shannon v. Shannon,* 965 F.2d 542, 553 (7th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 677, 121 L.Ed.2d 599 (1992) (same).

Under one of ERISA's civil enforcement provisions, 29 U.S.C. § 1132(a)(1)(B), a plan participant or beneficiary may sue to recover benefits due under the plan.[3] *Pilot Life,* 481 U.S. at 53, 107 S.Ct. at 1556. Indeed, "[a]ctions to recover benefits are the most frequent ERISA suits." *ERISA: A Comprehensive Guide, supra,* § 7.3.

Hemphill argues that his complaint states a claim under § 1132(a)(1)(B). In addition to alleging breach of contract and a duty of good faith, he alleges:

7. That on or about September 18, 1988, [Hemphill] was involved in an accident which resulted in severe and significant personal injury to [Hemphill].

.    .    .    .    .

9. That [Alta] and [Unisys] were the health care and secondary coverage insurance providers.

10. That [Hemphill] has made request of [Alta] and [Unisys] on numerous occasions, both orally and in writing, for payment to his health care providers, to the hospitals, for medical supplies, and for other necessary and related costs stemming from his injuries and hospitalization, yet [Alta and Unisys] have failed to pay said expenses.

.    .    .    .    .

WHEREFORE, [Hemphill] prays for a judgment against [Alta and Unisys] as follows:

.    .    .    .    .

37. For the medical expenses experienced by [Hemphill] not covered by [Alta] and

---

**3.** Section 1132(a)(1)(B) provides:
  A civil action may be brought—
  (1) by a participant or beneficiary—

.    .    .    .    .

  (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

[Unisys] in an amount to be proven at the time of trial.

(Complaint at 2–3 & 5).

■ Hemphill cites *Armbruster v. Benefit Trust Life Ins. Co.,* 687 F.Supp. 403 (N.D.Ill.1988), for the proposition that failure to identify the ERISA provision that supplies a source of relief is not necessarily fatal to a complaint.[4]

■ This court agrees that notice pleading does not require a correct citation to a statute, in order to state a claim for violation of that statute. *Morton v. Dow,* 525 F.2d 1302, 1306–07 (10th Cir.1975) (complaint which did not allege violation of a specific statute or regulation nevertheless set forth sufficient facts to state a claim for relief under the Federal Aviation Act of 1958); *Bartholet v. Reishauer,* 953 F.2d 1073 (7th Cir.1992) (pleading which gives sufficient notice of a claim showing that the pleader is entitled to relief under ERISA should not be dismissed for failure expressly to invoke ERISA). *Cf. Bramesco v. Drug Computer Consultants,* 834 F.Supp. 120, 122 (S.D.N.Y. 1993) (complaint that merely alleged "violation of ERISA 29 USC Sec 1140" set forth insufficient facts to state an ERISA claim). Complaints are to be "so construed as to do substantial justice." Fed.R.Civ.P. 8(f).

Although Hemphill's complaint is no model of clarity, the court finds that it states a § 1132(a)(1)(B) claim because it gives fair notice to Unisys that Hemphill is (1) a participant (2) in an employee benefit plan (3) who is suing to recover benefits under the plan. *See Talamine v. Unum Life Ins. Co.,* 803

F.Supp. 198, 201 (N.D.Ill.1992) (construing a complaint which set forth preempted claims for breach of contract and violation of § 154.6 of the Illinois Insurance Code[5] "as asserting a cause of action under 29 U.S.C. § 1132(a)(1)(B) 'to enforce [plaintiff's] rights under a plan' ").

### 4. Whether Unisys is a proper party defendant

■ A related question, which the parties have not addressed, is whether Unisys is a proper defendant in an ERISA action to recover benefits. ERISA specifies that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity." 29 U.S.C. § 1132(d)(1). Courts disagree as to whether an employer like Unisys can also be a proper defendant.

Some courts have summarily held that an employer is not a proper party defendant in an action to recover benefits. *Madden v. ITT Long Term Disability Plan,* 914 F.2d 1279, 1287 (9th Cir.1990), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991) ("ERISA permits suits to recover benefits only against the Plan as an entity"); *Miller v. Pension Plan for Employees of Coastal Corp.,* 780 F.Supp. 768, 773 (D.Kan. 1991), *aff'd on other grounds,* 978 F.2d 622 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1586, 123 L.Ed.2d 152 (1993) (granting summary judgment for a defendant employer in an action to recover benefits "for the additional reason that it is not a proper party").

---

4. The court in *Armbruster* nevertheless found that the complaint, which set forth three counts for breach of a medical insurance contract, failed to state an ERISA claim because "the plaintiff must plead and prove that the decision was arbitrary and capricious, unsupported by substantial evidence, or founded on an erroneous interpretation of law." *Id.* at 406. *Accord, Albert Einstein Medical Center v. National Benefit Fund,* 740 F.Supp. 343, 352 (E.D.Pa.1989).

Hemphill argues that his allegation of bad faith is analogous to an allegation that the decision was arbitrary and capricious. However, "a plaintiff no longer needs to allege an 'arbitrary and capricious' decision on the part of plan trustees to withstand dismissal of a complaint." *Belmont Community Hosp. v. Local Union No. 9,*

737 F.Supp. 1034, 1038 (N.D.Ill.1990). As discussed below, the Supreme Court has since held that a "de novo" standard generally applies in ERISA actions to recover benefits. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 108–115, 109 S.Ct. 948, 953–56, 103 L.Ed.2d 80 (1989). *Armbruster* is "no longer good law." *Belmont,* 737 F.Supp. at 1038.

5. Section 154.6 of the Illinois Insurance Code outlines "Acts constituting improper claims practice," including "Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear." Subsection (d). Thus, a claim under this section is comparable to a claim of bad faith under Utah law.

Other courts have held that an employer is a proper defendant if it is shown that he controls or influences the administration of the plan. *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir.), *cert. denied*, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988); *Adamo v. Anchor Hocking Corp.*, 720 F.Supp. 491, 498 (W.D.Pa.1989). There is no evidence before the court to show whether UNISYS controls or influences administration of its Plan.

The Tenth Circuit has not yet addressed the issue. However, in a number of cases where the issue was not raised, ERISA claims against an employer to recover benefits have been allowed to proceed. *E.g., Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1203 (10th Cir.1990); *Anthony v. Texaco, Inc.*, 803 F.2d 593, 598 (10th Cir.1986).

Hemphill should amend his complaint to assure that he has stated an ERISA claim against a proper party defendant, the Plan itself.

### 5. *Whether an ERISA claim based upon the denial of benefits for home care is time-barred*

Because ERISA contains no express statute of limitations for claims to recover benefits, courts borrow the most analogous state statute of limitations. *Held v. Manufacturer Hanover Leasing Corp.*, 912 F.2d 1197, 1200–01 (10th Cir.1990). Unisys argues that the most analogous limitation under Utah law is the three-year period for commencing an action on a written policy or contract of insurance. Utah Code Ann. § 31A–21–313(1) (1991).

Even if the three-year limitation does apply, "an ERISA cause of action does not accrue until a claim of benefits *has been made and formally denied.*" *Cotter v. Eastern Conference of Teamsters Retirement Plan*, 898 F.2d 424, 428–29 (4th Cir.1990) (emphasis in original; quoting *Rodriguez v. MEBA Pension Trust*, 872 F.2d 69, 72 (4th Cir.), *cert. denied*, 493 U.S. 872, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989)). *See Held*, 912 F.2d at 1205 ("an ERISA cause of action accrues when an application for benefits is denied"). "To hold otherwise would require lay participants and beneficiaries to be constantly alert for 'errors or abuses that might give rise to a claim and start the statute of limitations running.'" *Rodriguez*, 872 F.2d at 72 (quoting *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1501 (9th Cir. 1984)).

In *Rodriguez*, the plaintiff requested information about a lump sum payment of pension benefits in January 1985. The pension trust manager advised him that such a payment was not available, so the plaintiff requested a formal review of the denial of benefits. The pension trust reviewed the plaintiff's requests on three separate occasions and denied them each time. The plaintiff then filed suit under ERISA, but the district court dismissed his claims as time-barred. On appeal, the Fourth Circuit reversed, holding that although the plaintiff first made a claim for benefits in 1985, the trustees "did not formally deny him benefits until February, 1986." 872 F.2d at 71–72.

Although Hemphill's requests for medical benefits for home care were denied by July 1989, it is undisputed that he did not receive a formal or final denial of his claim until January 30, 1992, when Laura Gingras, Manager of National Accounts for Alta Health Strategies, Inc., sent him a letter in response to his appeal. (Ex. 6 to Massman Affidavit.) His complaint was filed about nine months later, in September 1992.

Thus, Hemphill's ERISA claim to recover benefits for home care, is not time-barred.

### 6. *Whether Unisys is entitled to summary judgment on Hemphill's claims for denial of benefits for home care, incontinence pads, and bladder control undergarments because the administrator did not abuse its discretion in denying these benefits*

The arguments which the court has discussed above, are based largely on the pleadings; to that extent Unisys' motion for summary judgment is "functionally the same as a motion to dismiss or a motion for judgment on the pleadings." 6 James Wm. Moore et al., *Moore's Federal Practice* ¶ 56.-

02[3] (2d ed. 1994). The remaining arguments are supported and opposed by evidence outside the pleadings; as to these arguments, summary judgment is proper if the pleadings and evidence of record "show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

### a.  Standard of review

■ A denial of benefits challenged under § 1132(a)(1)(B) is reviewed "de novo" unless the benefit plan gives the administrator discretion to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108–115, 109 S.Ct. 948, 953–57, 103 L.Ed.2d 80 (1989). If the plan does vest discretion in administrators, a court should not interfere with the exercise of that discretion. *Arfsten v. Frontier Airlines Retirement*, 967 F.2d 438, 440 (10th Cir.1992); *Pratt v. Petroleum Prod. Management Employee Sav. Plan*, 920 F.2d 651, 657–58 (10th Cir.1990).

Hemphill concedes that an "abuse of discretion" standard applies to his claims, in view of the following contractual terms:

> The administrator for processing benefit request will pay benefits in accordance with the terms of the plans. *All final decisions with respect to administration and interpretation of the terms of the plans*, however, *remain with the plan administrator.*

(SPD at 151; emphasis added).

Thus, for an issue of fact to be "material" in this case, it must relate to the question whether the administrator abused its discretion in denying benefits. *See Woolsey v. Marion Lab., Inc.*, 934 F.2d 1452, 1461 (10th Cir.1991). In this context, an "abuse of discretion" means that the administrator's decision was "arbitrary and capricious, not supported by substantial evidence or erroneous

on a question of law." *Arfsten*, 967 F.2d at 440. *See Pratt*, 920 F.2d at 657.

### b.  Benefits for home care

The record shows the following facts which are not disputed by the parties:

1. Hemphill made a claim for benefits under the Plan for care which was provided to him in his home by Beth Ilene Harris [6] from October 1988 through January 1989, in the amount of $7,731.00.[7]

2. The claim was reviewed and denied by Mary Massman, Director of Benefits, Programs and Planning, and Laura Gingras of the Benefits Office. (¶¶ 4–8, Massman Affidavit.)

3. Massman and Gingras considered the terms of the Plan and certain documents submitted by Hemphill's attorney. (*See* Memorandum in Support of Motion at 4 n. 5.) Among these documents was a letter from Ms. Harris, giving daily descriptions of the assistance she provided. (Ex. 7 to Massman Affidavit.)

4. Gingras informed Hemphill that his claim was denied because "Beth Ilene Harris is not a covered provider, and custodial services are not a covered benefit under the Unisys Plan." (Ex. 1 to Hemphill Affidavit.)

■ Hemphill argues that the care Ms. Harris gave was "home health care," within the contemplation of the policy. The Plan specifically covers:

> *Home health care providers* for supplies and non-custodial care prescribed by the attending physician for the treatment of an illness or injury and subject to approval through Call FIRST Coordinated Case Management review

SPD at 53 (emphasis in original). Hemphill's admitting physician, Dr. Nelson, prescribed the "outside home health assistance" as "necessary" after Hemphill's lengthy (21–day) hospitalization. (Exs. 2 & 3, Hemphill Affi-

---

6. Hemphill objects to the characterization of Ms. Harris as his then "girlfriend," though it appears that he later married her. (*See* Memorandum in Support of Motion at 1 & Memorandum of Points and Authorities in Opposition to Motion at 1–2.)

7. Hemphill has not specified in his complaint what benefits he seeks, but he listed "home health care" in his Answers to Interrogatories as one of the services for which he sought to recover benefits. (Ex. C to Memorandum in Support of Motion for Summary Judgment.)

davit.) Hemphill says Dr. Nelson would not let him leave the hospital until Hemphill obtained pre-approval from Call FIRST for Ms. Harris' home care. (¶ 6, Hemphill Affidavit.) Dr. Nelson also submitted a letter to "document that [Hemphill] has been released from my care to home health care per pre-approved Unisys Benefits Payment Office acknowledgement." (Ex. 4 to Hemphill Affidavit.) [8]

The expression "home health care providers" is italicized in this provision but is not defined anywhere in the Plan.[9] The Plan does enumerate "health care providers," which include a certified nurse anesthetist, a doctor or physician, a dentist, a registered or licensed nurse, a legally qualified midwife, and a physician's assistant who works for a clinic or physician and meets certain requirements. (SPD at 92.) Since most of the "health care providers" listed in the Plan generally do not treat patients at home, it would be natural to assume that a "home health care provider" has a meaning of its own and is not just a "health care provider" rendering services in the patient's home.

Ms. Harris is a certified medical secretary who received some specific training to provide home health services to Mr. Hemphill. (Ex. 4 to Massman Affidavit.) Though her qualifications do not meet the Plan's standards for a "health care provider," she might reasonably be considered a "home health care provider" if her services were precertified by Call FIRST.

But even when provided by a covered provider, "custodial care" is specifically excluded from coverage. (SPD at 55.) "Custodial care" is defined as "services and supplies" that:

* are furnished mainly to train or assist you or a covered dependent in personal hygiene and other activities of daily living rather than to provide therapeutic treatment. Activities of daily living include such things as bathing, feeding, and taking oral medicines

* can safely and adequately be provided by persons without the technical skills of a covered health care provider

*Id.*

Ms. Harris' itemization indicates that much of the care she provided was custodial in nature. Her services included "breakfast," "lunch," "dinner," "bathe," "dispense meds," "grocery shopping," "make out bills," "check mailbox," "load & unload dishwasher" and "housekeeping." (Ex. 7 to Massman Affidavit.) On the other hand, some of the care she provided went beyond matters of hygiene and daily living, to such services as "physical therapy," and "clean & redress wound." *Id.* These services might also be considered "custodial" under the second paragraph of the definition because they could be "safely and adequately be provided by persons without the technical skills of a covered health care provider," as Ms. Harris demonstrated. *Id.*

■ Under the standard of review that applies here, the Plan administrator's interpretations of "home health care provider" and "custodial services" are entitled to deference and must be upheld, even if they are "not the most natural interpretation," if they are grounded on a reasonable basis. *Gust v.*

---

8. Unisys correctly observes that state law claims of promissory estoppel are preempted by ERISA and that "no liability exists under ERISA for purported *oral* modifications of the terms of an employee benefit plan." *Miller v. Coastal Corp.*, 978 F.2d 622, 624 (10th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1586, 123 L.Ed.2d 152 (1993) (emphasis in original; quoting *Straub*, 851 F.2d at 1265). Where the written language of an ERISA plan is clear, any representation that is contrary to that language can be viewed only as a purported modification. *Peckham*, 964 F.2d at 1050 n. 13. However, where the written terms are ambiguous, as the expression "home health care providers" is here, oral representations may help interpret them.

Moreover, an oral representation that is consistent with the terms of the plan is not a modification. The court does not construe Hemphill's argument as suggesting that the terms of the Plan were modified by a conversation with Call FIRST representatives. Rather, he is pointing to evidence that one of the Plan's requirements for coverage of care by home health care providers—"approval through Call FIRST Coordinated Case Management review"—was satisfied. (SPD at 53.)

9. Obviously, Ms. Harris would not be a "home health care agency," which is defined as a licensed agency or organization that meets certain qualifications. *Id.*

*Coleman Co.,* 936 F.2d 583, 1991 WL 118529 (Table; unpublished disposition) (10th Cir. July 2, 1991); *see Woolsey,* 934 F.2d at 1460. "The Administrators' decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within their knowledge to counter a claim that it was arbitrary or capricious." *Woolsey,* 934 F.2d at 1460.

Of course, an interpretation that is inconsistent with the goals of a plan may not be reasonable. *See Holland v. Burlington Indus., Inc.,* 772 F.2d 1140, 1149 (4th Cir.1985), *cert. denied,* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986). One of the stated goals of the Unisys Medical Plan is "to protect [participants] financially against catastrophic medical expenses and to help [them] pay for quality medical services" so that they "receive the most appropriate, high-quality care in a cost-effective way." (SPD at 28.) The objectives of the Call FIRST provisions of the Plan include:

★ to help [participants] and Unisys manage the cost of health care without sacrificing the quality of care

★ to help [participants] choose health care alternatives that minimize waste and inefficiencies

★ to review proposed hospital stays ... to ensure that the care is medically necessary and delivered in the most medically appropriate setting

(SPD at 40). The Plan encourages participants to "[u]se alternative services to inpatient hospital care whenever possible" in order to "help control costs related to hospital stays." (SPD at 47.)

Ironically, a participant who follows this advice may find, as Mr. Hemphill did, that the alternative to inpatient hospital care which he used, is not covered. The court agrees that some of the Plan's language is ambiguous—even misleading—in this respect. Nevertheless, this inconsistency between the denial of benefits for Ms. Harris' home care and the stated goals of the Plan, does not rise to the level of an abuse of discretion.

Unisys is therefore entitled to summary judgment on Hemphill's claim to recover benefits for home care by Ms. Harris.

### c. Benefits for incontinence pads and bladder control undergarments

The following facts of record are also undisputed:

■ 1. Hemphill made a claim for benefits under the Plan to pay for incontinence pads and bladder control undergarments which he used from January 1989 to the present, in the amount of approximately $865.09.[10]

2. Rene Lochner and Abigail Countryman, who were employed in the Unisys Benefits Office, reviewed the claim and supporting documents.

3. Lochner informed Hemphill that the claim was denied because:

Although these items are prescribed by your doctor, they are not considered medically necessary for the treatment of your disease or injury. Medical necessity implies that the care will be expected to enhance or restore your physical health or well being.... This is considered a personal/social need, not a medical need.

(Ex. 10 to Massman Affidavit).

4. Hemphill's attorney wrote a letter objecting to the denial of the claim and submitted several letters from Hemphill's doctors. (Ex. 17 to Massman Affidavit.) Dr. Middleton opined that the "pads have been a medical necessity." (Ex. 11 to Hemphill Affidavit.) Dr. Labasky explained that Hemphill's "urethral incompetence [resulting from his injuries in the accident] is a relatively permanent situation and that Hemphill was "required to wear some type of undergarment to collect the urinary leakage." (Ex. 10 to Hemphill Affidavit.)

5. In addition, Harlan J. Cooper, a supervisor of the Product Test Department at Unisys, wrote that "if it were not for Mr. Hemphill's Bladder Control Undergarments

---

**10.** Although Hemphill did not specify these benefits in his complaint, he listed "payment for incontinent pads" in his Answers to Interrogatories as one of the supplies for which he seeks to recover benefits. (Ex. C to Memorandum in Support of Motion for Summary Judgment.)

he would be endangering his life." (Ex. 12 to Hemphill Affidavit.) Cooper explained that Hemphill was a Senior Technician with the company, who was required to work with high voltage and therefore had to "remain dry at all times to assure the safety of himself as well as his co-workers." *Id.* He concluded that, "For our benefits office to even suggest that these prescribed Bladder Control Undergarments are needed for personal/social use only is totally assinine [sic]." *Id.*

6. Abigail Countryman responded that the claim was denied, not only because the undergarments were not a medical necessity, but because they were "supplies" which are covered only if they meet the definition of "durable medical equipment." (Exs. 15, 16, & 18 to Massman Affidavit.)

To be a "medical necessity" under the Plan, services or supplies must be "generally accepted by medical professionals in the U.S. as proven, effective and appropriate" in the treatment of a covered injury. (SPD at 36.) There is no express requirement that the services or supplies "be expected to restore physical function to a reasonable level." (Letter from Abigail Countryman, Ex. 15 to Massman Affidavit, and letter from Rene Lochner, Ex. 10 to Massman Affidavit.)

Even if such a requirement should be implied, the administrator's finding that the undergarments were not a medical necessity, was not supported by substantial evidence. The documentation submitted in support of the claim heavily outweighed such a finding. Perhaps that is why the administrator changed its position and gave a new reason for the denial.

The administrator's interpretation that "supplies other than durable medical equipment are specifically excluded from coverage under the Unisys Medical Plan" (Ex. 16 to Massman Affidavit), is not reasonable but is "contrary to the clear language of the Plan." *Dennard v. Richards Group, Inc.*, 681 F.2d 306, 316 (5th Cir.1982); *see de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1188 (4th Cir.1989). The Plan defines "Covered expenses" as "[s]pecific expenses for medical services and *supplies* which are incurred in connection with treatment of any injury, illness or pregnancy." (SPD at 91; emphasis added.) "Services, *supplies* or treatments" are excluded from coverage only in specified circumstances, such as when "there is no legal obligation to pay, or charges would not be made except for the availability of benefits under the Plan." (SPD at 57; emphasis added.) The record contains no evidence that any of those excluding circumstances apply to Hemphill's claim.

In addition, the Plan covers "prosthetic appliances" or "devices which replace all or part of any internal body organ or external body part that is lost or impaired as a result of disease or injury," including a "cardiac pacemaker" and "wigs or artificial hairpieces." (SPD at 53–54.) Like a cardiac pacemaker, incontinence pads and bladder control undergarments serve the function of replacing or compensating for an organ or body part that is impaired. They meet the Plan's definition of a prosthetic appliance or device, in a sense that is even more practical and medically necessary than a wig or hairpiece.

Accordingly, Unisys is not "entitled to judgment as a matter of law" on this claim. *See* Fed.R.Civ.P. 56(c).

7. *Whether ERISA claims based upon the denial of benefits for past and future reconstructive or other surgery and long-term disability are barred for failure to exhaust administrative remedies*

Hemphill also seeks benefits for past reconstructive surgery in the amount of $400, future reconstructive surgery in an amount that remains to be ascertained, and long-term disability.[11] He points out that the past surgery was not merely cosmetic; it was for the initial suturing of his head laceration by a plastic surgeon in the emergency room of the hospital. (¶ 17, Hemphill Affidavit.)

▆▆ Hemphill concedes that his claims for future reconstructive surgery and long-term disability "have not yet arisen." (Mem-

---

**11.** *See* Answer to Interrogatory No. 1, Ex. C to Memorandum in Support of Motion for Sum-

mary Judgment and Memorandum itself at 1–2.

orandum of Points and Authorities in Opposition to Motion for Summary Judgment, at 10.) Claims which have not yet arisen cannot be considered as part of the unspecified "benefits" Hemphill seeks in his complaint; they are simply not before the court.[12]

■ As to the past surgery on his head laceration, Hemphill says he submitted a claim to the Plan "with the original hospital billings." (¶ 18, Hemphill Affidavit.) Mary Massman states that the Plan has no record that this claim was "denied or ever submitted *separately* for consideration." (¶ 23, Massman Affidavit; emphasis added.) She does not deny that the claim was submitted as part of Hemphill's original hospital bill.

The Plan does not require separate submission of the various items of a medical claim, especially where payment for all those items would be made to the same person or entity. Thus, there is sufficient evidence of record to support a finding that the claim was submitted.

Under ERISA, a plan is required to provide written notice to a participant whose claim for benefits is denied. 29 U.S.C. § 1133(1). The notice must be written in language that can be understood by the participant and must set forth the specific reasons why the claim was denied. *Id.* Without such notice, Hemphill could "only assume that because the suturing was performed by a member of the plastic surgery staff," the Plan administrators treated it as cosmetic surgery which was excluded from coverage. (¶ 18, Hemphill Affidavit.)[13]

■ Unisys argues that the claim for past surgery should be dismissed for failure to exhaust available administrative remedies. The Plan outlines a procedure for appealing a denial of medical benefits. Following that procedure, a participant must submit a written appeal "within 60 days *after the date you receive the determination*." (SPD at 64; emphasis added.) The determination "will include information regarding the proper per-

son to whom your written request for review should be addressed." *Id.*

Without a determination or written notice of denial, further appeal was not an available remedy. Unisys' motion for summary judgment is therefore denied as to Hemphill's claim to recover benefits for the past suturing of his head.

### B. Alternative relief

Alternatively, Unisys asks for an "order limiting discovery in this action to evidence previously considered by or presented to Unisys in denying plaintiff's claims." In his response to interrogatories, Hemphill has provided a list of potential witnesses whom he intends to call at trial, but the testimony of these witnesses was not part of the evidence considered by the administrator in denying the claims.

■ As discussed above, an abuse of discretion standard applies to the court's review of Hemphill's claims. Under this standard, the scope of review is generally limited to arguments and evidence before the administrator at the time of its decision. *Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 381 (10th Cir.1992); *Woolsey*, 934 F.2d at 1460. The court therefore agrees that discovery should be limited to evidence submitted to the administrator prior to the final denial of Hemphill's claims or which otherwise tends to show an abuse of discretion. The testimony of additional witnesses that only supports a contrary finding of entitlement to benefits would not be admissible.

### C. Motion to strike

■ Unisys has moved to strike various portions of Hemphill's affidavit on the grounds that they are irrelevant, argumentative, speculative, without proper foundation, not founded upon personal knowledge, or conclusory allegations. The court agrees that many portions of the affidavit are improper and should be stricken. However,

---

12. The complaint does not state a claim for declaratory relief, even if such a claim were ripe.

13. A participant who requests a written denial may have a claim for relief under § 1132(a)(1)(A)

if the plan does not mail an appropriate response within 30 days after his request. 29 U.S.C. § 1132(c).

the court is relying only on the following portions of the affidavit itself:

Paragraph 6, for Hemphill's testimony that he obtained pre-approval of the home care from Call FIRST and that he was not allowed to leave the hospital until he obtained that approval;

The first three sentences of paragraph 17, for Hemphill's testimony the past reconstructive surgery was for the initial suturing of his head laceration by a plastic surgeon in the emergency room of the hospital; and

The first two sentences of paragraph 18, for Hemphill's testimony that he submitted a claim for the surgery to the Plan with the original hospital billings and could only assume that the surgery was considered to be cosmetic by the Plan administrators.

The testimony in these portions is founded upon Hemphill's personal knowledge and will not be stricken. The other portions of the affidavit to which Unisys has objected, will be stricken.

### III. CONCLUSION

IT IS HEREBY ORDERED as follows:

1. Unisys is granted summary judgment on Hemphill's state law claims for breach of contract and breach of a duty of good faith, which are preempted.

2. Unisys is also granted summary judgment on Hemphill's ERISA claim to recover benefits for home care.

3. Unisys' motion for summary judgment is denied as to Hemphill's ERISA claim to recover benefits for incontinence pads, bladder control garments, and past reconstructive surgery.

4. Unisys' motion to strike portions of the affidavit of Raymond B. Hemphill is granted as to ¶¶ 2–5; ¶¶ 7–12; sentences 1 and 5–8 of ¶ 13; ¶¶ 14–16; sentences 4–7 of ¶ 17; sentence 3 of ¶ 18; and ¶¶ 19–20. Otherwise, the motion to strike is denied.

5. Discovery and admissibility of evidence at trial will be limited in accordance with this opinion.

6. Hemphill shall file an amended complaint within 30 days of this date, to clarify his claims in accordance with this opinion and to assure that a proper party defendant, the Unisys Medical Benefit Plan, is before the court.